UNITED STATES of America,
Plaintiff-Appellee,

v.

James Edward EAKES,
Defendant-Appellant.

No. 85–3259.

United States Court of Appeals,
Fifth Circuit.

Feb. 19, 1986.

Rehearing Denied March 17, 1986.

Neil C. McCabe, Houston, Texas, T. Gerald Treece, Houston, Tex., for defendant-appellant.

John P. Volz, U.S. Atty., Warren L. Montgomery, Asst. U.S. Atty., Harry W. McSherry, New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, TATE, and DAVIS, Circuit Judges.

CLARK, Chief Judge:

Appellant James Eakes challenges his convictions for conspiracy to import cocaine, conspiracy to possess with intent to distribute cocaine, and the corresponding substantive crimes. We affirm on all issues except Eakes' contention that the judgment erroneously recites convictions for two charges that were not in the indictment. We remand on this issue with directions for the entry of a new judgment that corresponds with the indictment and convictions.

I

Claude Griffin and Fernando Lopez hired James Eakes and Robert Ross to transport cocaine from Columbia into the United States. Eakes and Ross hired Billy Joe Nichols to pilot the aircraft transporting the cocaine. Nichols piloted the plane that brought shipments of cocaine into the United States in July, 1982, and in August, 1982.

Griffin, Eakes, and Ross had a falling out over money after the second shipment. Griffin made independent arrangements with Nichols for the transportation of a third shipment in September, 1982. Nichols was not able to transport this shipment because his aircraft developed mechanical problems. Griffin then made arrangements with Eakes and Ross for transportation of the third load.

Eakes and Ross contrived and executed a complex plan to deceive the other co-conspirators, and to steal and distribute the third load of cocaine themselves. Griffin and Lopez made plans for a fourth shipment, which they never attempted.

Nichols was convicted of conspiracy to import cocaine and to possess with intent to distribute cocaine on the basis of the unattempted plan to smuggle a fourth load of cocaine into the United States. Nichols was then charged with both conspiracy and the corresponding substantive crimes in three separate indictments. The three cocaine shipments that actually reached the United States formed the basis for the three separate indictments. Likewise, Eakes was charged with conspiracy and with the corresponding substantive crimes in three separate indictments based on the three shipments that entered the United States.

On appeal of the denial of Nichols' motion to dismiss his indictments as violative of the double jeopardy clause, a panel of this court held that Nichols had "participated in a single conspiracy to commit multiple violations of the drug control law." *United States v. Nichols*, 741 F.2d 767, 772 (5th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985). The district court then granted Nichols' motion to consolidate the three indictments.

The resulting superseding indictment was filed on November 29, 1984. It named Nichols and Eakes as co-defendants. It charged Eakes with one count of conspiracy to import cocaine, one count of conspiracy to possess with intent to distribute cocaine, three counts of importation of cocaine, and three counts of possession with intent to distribute cocaine. The indictment charged Nichols with the six counts that corresponded to the substantive crimes.

Eakes and Nichols were arraigned on the superseding indictment on December 6, 1984, the same day for which their trial was originally set. The presiding judge

interpreted the Speedy Trial Act (the Act) to require a thirty-day continuance from the date of the defendants' arraignment on the superseding indictment. Both Eakes and Nichols expressly refused to waive this right. After conferring with all attorneys on their upcoming schedules, the judge reset the trial for January 28, 1985. On January 22, 1985, Eakes filed a motion to dismiss the superseding indictment for failure to grant a speedy trial. The district court denied that motion at the pretrial hearing on the date of trial.

At trial, Eakes testified in his own defense. He claimed that he acted in the smuggling operation as a government informant. A jury convicted him on all eight counts of the indictment. He received a twelve-year sentence on each count. The sentences were to run concurrently.

On appeal, Eakes makes six arguments: (1) the trial court's continuance of the trial until January 28, 1985, violated his statutory right to a speedy trial; (2) the government failed to prove beyond a reasonable doubt that the substance Eakes and Nichols imported was cocaine; (3) the trial court's refusal to admit into evidence a taped telephone conversation between Ross and Drug Enforcement Administration (DEA) agent Howard Whitworth constituted reversible error; (4) the trial court's refusal to admit a tape of a conversation between Eakes and DEA agent Michael Hurley constituted reversible error; (5) the trial court's admission of photographs of cocaine and of an automobile seized by the police was reversible error; and (6) the judgment erroneously recites convictions for aiding and abetting, and for conspiracy to distribute cocaine.

## II

Eakes asserts that the delay of his trial until January 28, 1985, violated his rights under the Speedy Trial Act. That Act provides that a defendant's trial must begin "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). "Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se." 18 U.S.C. § 3161(c)(2). The Act also defines certain "periods of delay" which are not included "in computing the time within which the trial of any such offense must commence." *See* 18 U.S.C. § 3161(h).

Relying on the language of the Act and its legislative history, the United States Supreme Court recently held that the Act does not mandate the commencement of a new thirty-day trial preparation period upon a defendant's arraignment on a superseding indictment. *United States v. Rojas-Contreras,* —— U.S. ——, 106 S.Ct. 555, 556, 88 L.Ed.2d 537 (1985), *reversing* 730 F.2d 771 (9th Cir.1984). Due to a typographical error, the original indictment against that defendant mistated the date of a previous conviction on which the enhancement of the charged offense was based. The superseding indictment corrected that reference. The defendant claimed entitlement to a thirty-day continuance of his trial under § 3161(c)(2) of the Speedy Trial Act. *Id.* at —— – ——, 106 S.Ct. at 556–57.

In rejecting this claim, the Supreme Court stated that "a defendant must [not] always be compelled to go to trial less than 30 days after the filing of such an indictment." *Id.* at ——, 106 S.Ct. at 558. The district judge still has a broad discretion to grant a continuance if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* (quoting 18 U.S.C. § 3161(h)(8)). The "ends of justice" provision authorizes a continuance in cases where a superseding indictment prejudices a defendant. *Id.* at —— – ——, 106 S.Ct. at 558.

Eakes claims that the trial court erroneously continued his trial for thirty days on

its own motion.[1] That additional thirty days was not a properly excludable period under the Act. As a result, he says, the seventy days during which the Act mandated the trial must commence expired before the trial took place. Thus, Eakes claims, his right to a speedy trial was violated.

Eakes also makes the following two alternative arguments. First: On November 15, 1984, the trial court correctly determined that twenty-three days remained in his initial thirty-day preparation period. Between that date and Eakes' arraignment on the superseding indictment on December 6, 1984, six non-excludable days elapsed. Even if the Act required a new excludable thirty-day waiting period upon his arraignment on the superseding indictment, that new period should have run concurrently with the days remaining in the original preparation period. Seventeen days remained in that first preparation period. The second period, and the time during which Eakes' trial had to commence, expired on January 5, 1985.

Second: Even if the additional thirty-day continuance was proper, excludable, and not required to run concurrently with the original preparation period, the trial court miscalculated the number of days remaining in the first period. The court allowed for twenty-three additional days when only seventeen remained. The time for commencement of Eakes' trial thus expired on January 22, 1985.

None of Eakes' arguments are tenable under the facts and circumstances present here. At the arraignment on the superseding indictment, the presiding judge noted that the superseding indictment represented a "housekeeping maneuver" which did not contain any new substantive charges against Nichols and Eakes. He stated that he interpreted the Act to entitle the defendants to a thirty-day waiting period between the time of their first appearance on the superseding indictment and the commencement of trial, absent their waiver of this

right. He then asked Eakes' attorney if Eakes was prepared to waive this right and to proceed with the trial that morning as scheduled. Eakes' attorney answered negatively. Nichols' attorney also responded negatively to the same question. In light of these responses, the judge stated that since both defendants wished to exercise what he perceived to be their rights under the Act, continuing the trial would best serve the ends of justice. Following a discussion between the judge and the attorneys concerning their respective schedules, the judge reset the trial for January 28, 1985. Eakes' attorney expressly agreed to that date.

In *Rojas-Contreras*, and in all but one of the cases cited by Eakes in support of his main argument, it was the defendant who requested the thirty-day continuance after the return of a superseding indictment. The alleged error of the district court was the court's refusal to grant that request. *See United States v. Adu*, 770 F.2d 1511, 1513–14 (9th Cir.1985) (new thirty-day period not required where new indictment merely corrected a clerical error and did not change alleged facts or charges); *United States v. Hawkins*, 765 F.2d 1482, 1487 (11th Cir.1985) (trial court has discretion to balance interests of government and defendant and grant or deny a continuance for trial preparation on a superseding indictment); *United States v. Rush*, 738 F.2d 497, 510–11 (1st Cir.1984) (new thirty-day period not required where superseding indictment named additional defendant even though original indictment was still outstanding), *cert. denied*, —— U.S. ——, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985); *United States v. Horton*, 676 F.2d 1165, 1170 (7th Cir.1982) (new thirty-day period not required where new indictment charged same offense but reduced the number of counts), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983); *United States v. Todisco*, 667 F.2d 255, 260 (2d Cir.1981) (new thirty-day period not required where

---

1. If the trial court grants a defendant's motion to dismiss an indictment, and the government then reindicts the defendant on the same basic charges, the thirty-day preparation begins anew with regard to the new indictment. 18 U.S.C. § 3161(d)(1).

charges in the superseding indictment were substantially the same as those in the original indictment, and where substantial discovery had taken place), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1250, 71 L.Ed.2d 444 (1982); *see also United States v. Harris,* 724 F.2d 1452, 1454–55 (9th Cir.1984) (new thirty-day period required because "section 3161(c)(2) ... guarantee[s] that the defendant is not forced to trial less than thirty days from the date on which the defendant first appears *on the indictment on which the defendant ultimately goes to trial* ") (emphasis in original).

In *United States v. Dennis,* the Eighth Circuit held that the trial court's grant of the government's motion for a continuance after the trial court dismissed a principal count of the indictment was not an abuse of discretion under the ends of justice provision or a violation of the appellant's constitutional right to a speedy trial. 625 F.2d 782, 793–94 (8th Cir.1980).

■ Here, although the judge misinterpreted the Act, he granted the thirty-day delay because Eakes expressly refused to waive his assumed right to it. Eakes did not object to the delay at that time. Now, in an effort to turn the benefit he accepted into an error that would undo his conviction, he complains that the grant and his acceptance of extra preparation time violated his rights. The Speedy Trial Act entitles criminal defendants to adequate time for preparing a defense, but that right may not be used as a two-edged sword in this fashion. *Cf. Rush,* 738 F.2d at 508 (defendants may not "deliberately obtain an (h)(8) continuance for their own convenience in the face of speedy trial concerns articulated by the trial court and then later claim that the court abused its discretion in granting the requested continuance") (citations omitted).

*Rojas-Contreras* and the facts of this case also refute Eakes' alternative arguments. A district judge has the discretion to continue a trial under the ends of justice provision even though the Act does not require an additional thirty-days after arraignment on a superseding indictment.

*Rojas-Contreras,* —— U.S. at —— – ——, 106 S.Ct. at 558–59. A judge's finding that a continuance would best serve the ends of justice is a factual determination subject to review under the clearly erroneous standard. *See United States v. Nance,* 666 F.2d 353, 356 (9th Cir.) ("we do not disturb factual findings underlying the district court's determination unless they are clearly erroneous"), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982).

The judge here continued the trial because both Eakes and Nichols expressly refused to waive any rights they had under the Act, and because their arraignment on the superseding indictment took place on the same day for which the trial was scheduled. The defendants' refusal to waive their assumed right to additional time indicated to the judge that the defense was not ready for trial. In granting the continuance, the judge stated that by doing so, "the ends of justice will be best served." The judge then discussed a date for the trial with all four defense attorneys. The judge and the attorneys agreed on January 28, 1985, as the preferable date for everyone. Eakes' attorney expressed satisfaction with that date.

In light of these facts, the judge's decision to continue the trial was not clearly erroneous, and any error he made in calculating the appropriate number of additional days did not prejudice Eakes. The record discloses that he continued the trial until January 28th for the convenience of counsel on both sides, not, as Eakes contends, in order to include an erroneously calculated additional twenty-three days. In fact, the trial judge first suggested a trial date of January 7, 1985. The trial court's conclusion that a continuance would best serve the ends of justice under these circumstances was not clearly erroneous, nor was his election of a trial date violative of Eakes' statutory right to a speedy trial.

■ Eakes also implies, however, that his conviction cannot stand because the district judge did not comply with the Act's requirements for the grant of an ends of justice continuance. The Act provides that

the court must "set[ ] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). The Act also articulates permissible and impermissible considerations for making such a determination. *See* 18 U.S.C. § 3161(h)(8)(B), (C). Eakes suggests that the district judge failed to sufficiently state his reasons for granting an ends of justice continuance.

Contrary to Eakes' suggestion, the basis for the judge's grant of an ends of justice continuance is apparent from the record. The judge granted the continuance "given the fact that both defendants ... have decided to exercise their right under 3161(c)(2) and the fact that both men were only arraigned [sic] today on the counts contained in the superceding indictment." The clear meaning of the exchange between the judge and the defense attorneys was that the judge was ready for trial that day and wanted to know whether the defense was also ready or whether it needed more time. The negative reply of Eakes' attorney when the judge asked for a waiver of rights under the Act indicated the defense was not ready for trial and did need more time.

We decline to apply a hypertechnical construction to the language of the Act in this case where the judge clearly granted the continuance for the benefit of and at the indirect request of the defendant who now complains of that grant. *Cf. United States v. Richmond*, 735 F.2d 208, 211–12 (6th Cir.1984) (two-week postponement of trial after jury selection because defense counsel was not ready did not constitute attempt by trial judge to evade Speedy Trial Act requirements); *United States v. Nance*, 666 F.2d at 357–58 (portion of continuance necessitated by defense counsel's scheduling conflicts was excludable under ends of justice provision). The judge used the ends of justice provision in a reasonable manner under the circumstances. While the better practice would have been to articulate specific reasons, the record ade-

quately defines the basis on which the court acted. Eakes has wholly failed to demonstrate the continuance until January 28, 1985, constituted reversible error.

### III

Eakes also urges reversal on the ground that the government failed to prove beyond a reasonable doubt that the substance he imported was cocaine. In response to a charge that the evidence is insufficient to support the judgment, we consider the evidence in the light most favorable to the government. "We will reverse only if a reasonably minded jury must necessarily have entertained a reasonable doubt of a defendant's guilt." *United States v. Galvan*, 693 F.2d 417, 419 (5th Cir.1982) (quoting *United States v. Vergara*, 687 F.2d 57, 60 (5th Cir.1982)).

Eakes concedes that circumstantial evidence may establish the identity of a drug in a prosecution for violation of the narcotics laws, as long as it does so beyond a reasonable doubt. *See United States v. Quesada*, 512 F.2d 1043, 1045 (5th Cir.), *cert. denied*, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975) (citations omitted). He claims, however, that the circumstantial evidence the government offered to prove the substance involved in this case was cocaine was insufficient. He relies on several cases in which courts held that particular circumstantial evidence not offered here was sufficient for an affirmance of both conspiracy and substantive drug convictions. *See United States v. Harrell*, 737 F.2d 971, 978–79 (11th Cir.1984) ("Identification based on past use coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance."), *cert. denied*, —— U.S. ——, 105 S.Ct. 1392, 84 L.Ed.2d 781 (1985); *United States v. Haro-Espinosa*, 619 F.2d 789, 795 (9th Cir.1979) (six tests conducted by an expert were sufficient to establish substance was cocaine); *United States v. Crisp*, 563 F.2d 1242, 1244 (5th Cir.1977) (testimony establishing defendants referred to substance as coke or

cocaine, snorted it, cut it, weighed it, tested it over a flame and under a microscope, and sold it for large amounts of money was sufficient to prove identity of substance).

Other cases suggest, however, that various types of circumstantial evidence are sufficient to establish the identity of a controlled substance in a criminal prosecution. *United States v. Scott*, 725 F.2d 43 (4th Cir.1984), involved proof that a substance was cocaine very similar to the proof offered in the case at bar. The prosecution in *Scott* produced no samples of the substance in question, no chemical analysis, and no expert testimony. The government relied on the "lay testimony" of a cocaine user who stated that he bought some powder from the "same batch" as that purchased by the defendant, that he tested the substance by "snorting" it, and that he concluded it was cocaine. *Id.* at 44. The court defined the permissible types of circumstantial proof:

> [E]vidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

*Id.* at 45–46 (quoting *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir.1976)). The court concluded that all these types of circumstantial proof were present in the case and confirmed the appellant's convictions for possession of cocaine. *Id.*

In *United States v. Hill*, 589 F.2d 1344 (8th Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979), the defendant was charged with fraudulently obtaining by means of false orders, and illegally distributing, diet pills manufactured by his employer. As in *Scott* and the case at bar, the government did not seize the drugs or have direct evidence that Hill ever possessed them. The government's evidence showed only "that the shipments were never returned to [the manufacturer] for credit, that Hill had volunteered to pick up the shipments and take care of the matter, [and] that Hill did go to the customers' offices and take the pills (although there were not always eyewitnesses)." *Id.* at 1349. The court held this evidence was sufficient to show possession. *Id.* The court further noted that "Hill's claim that none of the government witnesses could identify the contents of any of the specific shipments as Statobex-D [diet pills] does not defeat the reasonable inference of the evidence presented that the boxes did contain Statobex-D." *Id.* at 1350 (citation omitted).

*United States v. Lawson*, 507 F.2d 433 (7th Cir.1974), *cert. denied*, 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975), involved a cocaine transaction. The court held that the following evidence identified the substance in question as cocaine sufficiently to support convictions for conspiracy and substantive crimes: the defendant's girlfriend and the purchaser testified the substance was a white powder; they also testified the defendant spoke of selling "cocaine"; the purchaser paid the defendant a substantial amount of cash for the white powder; and the transaction was carried out in secret. *Id.* at 439.

Similar circumstantial proof was present in the case at bar. Claude Griffin testified that he conspired with others to import cocaine into the United States. He testified that Eakes participated in the transportation of the substance. Griffin testified that he received large amounts of money in payment for most of this work, and that he received cocaine in payment for the second load.

Paul Gray testified that the Griffin-Lopez conspiracy imported three loads of cocaine, and that Eakes participated in some way with each load. Gray unloaded and delivered the first two loads for Griffin, and received and delivered large amounts of cash in return. He stated the first load

was packaged in a fashion usual for cocaine, individual packages or kilos and duffle bags. The second load was packaged in plastic bags and suitcases. Gray did not see what the cocaine looked like at the unloading, but he did later.

Bob Folse testified that Eakes contacted him about using an airstrip on his land. The conspirators paid him $5000 for use of the airstrip for the first load of cocaine. Folse thought they were importing marijuana. When he found out the smuggled substance was cocaine, he renegotiated the fee and Griffin agreed to pay him $60,000 for the use of his property on the second cocaine load. Later, Folse agreed to take one kilo of cocaine in payment rather than the money. Folse had seen cocaine before, but had never used or sold it. His cousin sold the kilo for either $68,000 or $72,000.

Robert LeBlanc testified that the plane carrying the third stolen load of cocaine landed on his property and that Ross offered him a million dollars to secure and distribute the load. He helped unload that cocaine, which was packaged in duffle bags. LeBlanc kept six of the duffle bags, out of which he sold between fifteen and thirty kilos of cocaine. He testified that the people involved with this third load eventually gained over two million dollars from the transaction. LeBlanc had been involved in various capacities with marijuana and cocaine smugglings before this incident.

William White also testified that he helped unload the stolen third load of cocaine. Three or four duffle bags from the plane were loaded in his car and he took them to his home. The next day he noticed one of the duffle bags was unlocked. He took a package out of the duffle bag and opened it. He testified the package contained cocaine. White and his partner kept two kilos in return for their storage of a portion of the load. They sold part of the kilos they kept. Although White stated that he did not see Eakes in connection with this load of cocaine, other witnesses testified that Eakes participated in the plan to steal this load from Griffin and Lopez.

Eakes testified as well concerning his knowledge of and participation in this plan. Throughout his testimony, Eakes and his attorney referred to the substance transported by the Griffin-Lopez conspiracy as cocaine. Eakes also testified that the conspirators received large cash payments for their transportation work and for the cocaine they distributed.

■ The whole of the above circumstantial evidence is sufficient to support an inference that the substance imported by the smuggling conspiracy in which Eakes participated was cocaine. Eakes and all the co-conspirators referred to the substance as cocaine. The substance was packaged in kilos as cocaine normally is packaged. The transactions concerning these packages were carried out in secret. The co-conspirators received substantial sums of money or cocaine for their transportation work. The sellers received large cash payments for the substance. Co-conspirators familiar with cocaine testified the packaged substance was cocaine. The fact that various conspirators successfully imported and sold the substance three times indicates that they dealt with cocaine and not a counterfeit product. In light of this evidence, here, as in *Hill*, Eakes' claim that no witnesses could verify the contents of the various loads as cocaine "does not defeat the reasonable inference of the evidence presented that the" substance imported in each load was cocaine. 589 F.2d at 1350.

IV

Eakes objects to three of the district court's evidentiary rulings. The trial judge refused to admit into evidence a taped conversation between co-conspirator Ross and DEA agent Whitworth, and a taped conversation between Eakes and DEA agent Hurley. The judge admitted photographs of cocaine seized by the police and of the car in which the police found the cocaine.

Rulings on the admissibility of evidence are within the discretion of the trial court. We review those rulings only for an abuse

of discretion. *United States v. Acosta,* 763 F.2d 671, 693 (5th Cir.), *cert. denied sub nom. Weempe v. United States,* — U.S. ——, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985) (citation omitted); *United States v. Cochran,* 697 F.2d 600, 608 (5th Cir.1983) (citation omitted).

The judge excluded the tape between Ross and Whitworth primarily because Ross was a fugitive and not available for cross-examination during the trial. The judge admitted a transcript of the tape between Eakes and Hurley. The record leaves in doubt whether either tape was audible. Eakes has not shown that the trial judge abused his discretion in refusing to admit these tapes.

Government witness Paul Gray testified that he unloaded a large amount of cocaine in August, 1982, from a plane piloted by Nichols. Although Gray testified that Eakes did not go to the landing strip for the unloading of this second load of cocaine, he stated that he met with Eakes and Griffin in a motel before going to meet the plane. He said Eakes gave him some instructions regarding the seats in the airplane. Gray delivered a car containing a portion of that load, designated by prearranged markings, to a man known as Oscar. Gray testified Oscar was driving the car depicted in the photographs when Gray met with him to decide on a delivery site for the cocaine. He also testified that the packaging and markings of the cocaine that he delivered to Oscar were similar to that of the cocaine seized by the police and depicted in the photographs.

Captain Robert Early of the Jefferson Parish Police testified that he conducted surveillance of a man named Oscar Tabarres over the weekend during which Tobarres was arrested. He observed Oscar drive to a warehouse. The packaged substance depicted in the photographs was seized from a car in this warehouse. The bags had differentiating marks on them. This substance field tested positive for cocaine. The seizure occurred within a week of the flight piloted by Nichols and the delivery to Oscar by Gray.

 Evidence may be so remote as to be irrelevant. Here, however, the government demonstrated a connection in time between the evidence in question and the crimes charged to Eakes, and a connection between a co-defendant hired by Eakes and the parties from whom the police seized the evidence. The trial judge did not abuse his discretion in admitting the photographs of the cocaine and car seized from Oscar.

V

Finally, Eakes claims that the judgment erroneously cites two offenses for which he was neither indicted nor convicted, aiding and abetting and conspiracy to distribute. We remand on this issue with directions for the entry of a new judgment that is consistent with the indictment and jury verdict.

AFFIRMED in part, and, in part, REMANDED WITH DIRECTIONS.