UNITED STATES of America, Plaintiff,

v.

Thomas GAMBINO, Philip Loscalzo and
Guiseppe Gambino, Defendants.

No. CR–90–1051 (S–3).

United States District Court,
E.D. New York.

April 15, 1993.

Laura Ward, Geoffrey S. Mearns, Asst. U.S. Attys., for U.S.

Michael Rosen, New York City, for Thomas Gambino.

Judd Burstein, New York City, for Thomas Gambino.

Murray Richman, Bronx, N.Y., for Philip Loscalzo.

Jay Goldberg, New York City, for Guiseppe Gambino.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendants, Thomas Gambino, Guiseppe Gambino, and Philip Loscalzo have filed motions which seek to (a) dismiss the superseding indictment against Thomas Gambino; (b) dismiss Count Three of that indictment for improper venue; (c) strike prejudicial surplusage from the indictment; (d) exclude certain evidence; and (e) obtain disclosure.

### I

### *Dismissal of Superseding Indictment Against Thomas Gambino*

Thomas Gambino was initially charged in an indictment that was filed on December 12, 1990 with two counts alleging violations of 18 U.S.C. §§ 1962(c) (RICO) and 1962(d) (RICO conspiracy). The racketeering acts incident to those counts with which he was charged were alleged violations of 18 U.S.C. §§ 2 and 1955; § 892 and § 894. Pretrial bail and detention hearings followed. On December 12, 1990 an order of excludable delay was entered pursuant to 18 U.S.C. § 3161(h)(8)(B)(ii) based upon a determination that this was a complex case.

A superseding indictment was filed on July 18, 1991. The charges against Thomas Gambino were not altered. On that day several other matters were considered. Mr. Rosen, counsel to Thomas Gambino, advised the court that he would not move for a severance. A trial date of September 23, 1991 was reaffirmed. The motion made by Mr. Rosen on behalf of Gambino for an evidentiary hearing pursuant to *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), was granted, the hearing, if still warranted, to be held at the conclusion of the trial. That motion is, technically, still pending. The disqualification of counsel for then codefendants Gotti and Gravano, and the need that this disqualification created for them to obtain new counsel, caused the September 23, 1991 trial date to be deferred. At a status conference held on August 28, 1991, Mr. Rosen advised the court that his client was required to appear for trial in the state court in January, 1992.

On September 30, 1991 the government, by motion returnable October 3, 1991, sought an order severing the trial of Thomas Gambino. That motion was not opposed and was grant-

ed in an order dated October 23, 1991. The trial of codefendants Gotti, Gravano, and Locascio was fixed for January 21, 1992. Gravano pleaded guilty in the interim. The remaining defendants, Gotti and Locascio, were found guilty on all counts on April 2, 1992 and sentenced on June 23, 1992. Post-trial motions were made following the verdict and following sentencing, the last being made as recently as February 3, 1993.

On August 4, 1992 a superseding indictment in which Thomas Gambino was joined with two other defendants was unsealed and filed. This indictment and the indictment originally filed on December 12, 1990, as to Thomas Gambino, are the same except that Gambino was joined with two new defendants and was charged with violating 18 U.S.C. §§ 1952 and 2 as a predicate racketeering act in Count One and as a separate offense in Count Three. Thomas Gambino appeared before this court for arraignment on August 14, 1992. A status conference was scheduled for August 21, 1992 at which counsel for all defendants appeared. Mr. Goldberg, counsel for codefendant Guiseppe Gambino, and Mr. Richman, counsel for codefendant Loscalzo, apprised the court of their respective prior engagements and of their need to review approximately 1,000 cassettes; they requested a trial date after the second week of January, 1993. Mr. Rosen joined in their application. (Tr. Aug. 21, 1992, at 4). The government announced its readiness to proceed within seventy days but agreed to abide by the court's direction. When the end of January or the first week of February was suggested as a viable trial date, Mr. Rosen stated as follows:

MR. ROSEN: I don't want to cry the blues, but I think I have to at least let you know of a potential problem. I don't really see it as a major problem. Perhaps your Honor and Judge Leisure in the Southern District can work it out.

There is a trial scheduled. I don't know if it's a firm date or tentative date because a superseder is about to come down next week or the week after, a case in front of Judge Leisure also called United States of America versus Gambino. It's a similar name from what we have heard. There is a superseder coming down and perhaps the Government can work it out, who goes where first.

February 1, 1993 was then fixed as the trial date in this case, and an order of excludable delay based upon 3161(h)(8)(B)(ii), in which Mr. Rosen concurred (Tr. Aug. 21, 1992, at 6), was issued to cover the period August 21, 1992 to February 1, 1993.

On that same day, August 21, 1992, the government filed a motion to modify the terms of Thomas Gambino's bail. A hearing was held on that motion on September 14, 1992, and it was denied from the bench.

On September 24, 1992 Mr. Rosen filed a motion for a severance on behalf of Thomas Gambino which was returnable on October 2, 1992. That motion was predicated entirely on Mr. Rosen's conflicting trial schedule. On the return date Mr. Rosen stated that "it would be very difficult, indeed, to go to trial in November, but I'm committed to do it, if the court sees its way clear of giving us this opportunity to fight this case the way I'm prepared to fight it and the time I put into it, ... We posed the alternative, either the severance and earlier trial or to put the case over beyond the Judge Leisure case." (Tr. Oct. 2, 1992, at 2–3). The government opposed the motion to sever and, for reasons indicated upon the record (Tr. Oct. 2, 1992, at 6, 10), the motion was denied. During the course of that proceeding, Mr. Burstein, co-counsel for Thomas Gambino, after alluding to the time gap between the verdict in the Gotti case (April 2, 1992) and the superseding indictment in this case (August 4, 1992) and without reference to the Speedy Trial Act, observed that "if this case went in May instead of February it would not be the end of the world." (Tr. Oct. 2, 1992, at 8).

The reference to the time gap which is the crux of this motion prompted the court to inquire of the government why the case was not brought on sooner. The government responded as follows:

MS. WARD: I can represent to the court between April and August we did investigations to make a determination as to whether or not we should be adding these two additional defendants. Based on testimony that had occurred during the Gotti

trial and based on discussions with Mr. Gravano, we made a determination. We had to make the presentations to the Grand Jury, and we superseded as soon as we possibly could putting in the surveillances, and we thought it was in the best interest of the case and judicial economy, since we intend to try the two individuals on these charges, to combine them with Mr. Gambino because it would have been an identical trial.

(Tr. Oct. 2, 1992, at 8–9).

At the next status conference, October 9, 1992, the following statement was made by Mr. Rosen:

MR. ROSEN: Your Honor, because of a little logistical problem over the holidays, I didn't go to see my client over in the Southern District until yesterday and I come to advise the Court that my client in that case has asked if it is humanly possible and doesn't cause anybody great pain and hardship, that he would prefer me to continue to represent him.

He paid me in the past. We've been together a couple of years on that case. It's a long and involved case and I suggest most respectfully, I know your Honor had declined to sever the case and move it forward, but most respectfully, your Honor, this is a two-week trial and I would ask your Honor to really consider adjourning it then so that I can complete the case before Judge Leisure.

Judge Glasser, I don't mean to be critical but I know your Honor had said you had a lot of cases to try. *Our case doesn't involve any speedy trial problems.* All the defendants are out.

Again, not to be critical but the Government didn't move with the greatest amount of haste and anxiety to bring Mr. Gambino here to trial. They had their own agenda. They wanted to do some more investigation. They wanted to make additional presentations. That is their right, but in light of what you said last week about your sensitivity to people trying to have a lawyer of their choice, and since I really can't see, and mean this sincerely, any phenomenal prejudice certainly to the Court and to the government in putting it over for a

couple of months, I would ask that you really consider most respectfully putting this off until I finish the case in front of Judge Leisure.

I don't see how anybody gets hurt, with all due respect.

(Tr. Oct. 9, 1992, at 2–3) (Emphasis added). During the course of the proceeding on February 19, 1993, the court was informed, without contradiction, that defense counsel indicated to the government that he did not want the matter calendared during the summer months of 1992. (Tr. Feb. 19, 1993, at 24).

On December 7, 1992, the defendant Thomas Gambino filed this motion seeking, among other things, an order "[d]ismissing the superseding indictment against Thomas Gambino because the government failed to comply with the Speedy Trial Act, *and instead trying Thomas Gambino alone on the original indictment.*" (Emphasis added). A hearing on this motion was delayed until February 19, 1993 due to the unavoidable unavailability of counsel, and the trial of this case was fixed for March 22, 1993. The defendant Thomas Gambino makes no Speedy Trial Act claim for the period August 4, 1992 to March 22, 1993. It is the period between March and August of 1992 during which he claims the Speedy Trial clock ran down.

### Discussion

■ The detailed chronology of events has been furnished in the belief that it, more eloquently, perhaps, than any other narrative statement could, places in sharp focus the issue raised by this motion as the court firmly believes it to be, namely: should defense counsel be permitted simultaneously to use the Act as a sword as well as a shield and to sandbag the court and the government in doing so? Or, to put it slightly differently, is the defendant correct when he says "the truth is that the Speedy Trial Act is obviously designed to permit defendants to take advantage of government errors"? (Reply Memorandum of Law in Support of Defendants' Pretrial Motions, at 3).

In the defendant's view, "the government can avoid a finding that it violated the

Speedy Trial Act only if it can establish that the time between March and August of 1992 was excludable pursuant to § 3161(h)." The only subdivisions of that section which he contends are arguably relevant are §§ 3161(h)(1) and 3161(h)(8)(A); he argues, however, that neither of these sections are applicable. The court concurs in the view that neither of those subdivisions is applicable but not in the view that those are the only subdivisions that are relevant.

The government urges the adoption of the view that having made a *Kastigar* motion, the time during which that motion continues to remain under advisement is excludable. The government, having successfully contended when the motion was made that its determination should await the conclusion of the trial, is surely disingenuous in now contending that the Act, designed to accelerate criminal trials, is suspended until the trial has ended. The government also urges the court to give continued efficacy to a finding made on the original indictment, in which all parties concurred, that delay in commencing the trial was excludable because the case was so complex, pursuant to § 3161(h)(8)(B)(ii). The codefendants in that original indictment, John Gotti and Frank Locascio, have already been tried, convicted, and sentenced. The government urges, however, that since the defendant (Thomas Gambino) was severed from that indictment and is yet to be tried, that finding of complexity is still extant. Finally, the government asserts, that having repeatedly requested a further continuance, the defendant has either waived a Speedy Trial claim or is abusing the process of the Speedy Trial Act to obtain a severance, clearly a purpose for which it was not intended. In his Memorandum of Law, the defendant states: "The only fair way to cure the prejudice from this delay is to sever Mr. Gambino from his codefendants or to permit him to go to trial on the original indictment in this case." (Memorandum of Law in Support of Defendants' Pretrial Motions, at 2).

The defendant places principal reliance upon *United States v. LoFranco*, 818 F.2d 276 (2d Cir.1987). There LoFranco appealed from a judgment of conviction after he pleaded guilty to three counts of a six count indictment. His claim, among others, was a Speedy Trial Act violation. The *ratio decidendi* of the case as stated in a *per curiam* opinion is simply that " 'violations of the defendant's rights to a speedy trial' are non-jurisdictional and therefore waived by a guilty plea that does not include a court-approved reservation of the issue." *Id.* at 277. It is the dictum which follows that the defendant trumpets as pronouncing the doctrine he assiduously advances in support of his position, namely, "that the 'complex case' exclusion remained viable only until the commencement of the first trial of this indictment":

> In holding that LoFranco's guilty plea waived any Speedy Trial Act objections he might have had, we do not imply that there was a violation of the act. We do note, however, that Chief Judge Munson's order of September 26, 1985 excluding from computation under the act all time from that date until trial pursuant to § 3161(h)(8), could be interpreted as allowing virtually unlimited delays. We assume that this order was made in anticipation of a particular trial date, thus limiting what might otherwise be a boundless exclusion of time that could undermine the purposes of the Speedy Trial Act. We remind district judges that the length of an exclusion under § 3161(h)(8) for a "complex" case, 18 U.S.C. § 3161(h)(8)(B)(ii), should reasonably be related to the actual needs of the case, and should not be used either as a calendar control device or as a means of circumventing the requirements of the Speedy Trial Act.

The basis for the defendant's reading of that dictum, namely, that an exclusion for complexity has a life expectancy limited by the commencement of the trial, is not readily apparent. On the contrary, it can fairly be argued that the exclusion as applied to *this* defendant *was*, as explained by Assistant U.S. Attorney Ward, *supra*, reasonably related to the actual needs of the case and was not used as a calendar control device. I address the government's assertion of waiver and the defendant's assertion that the only relevant sections of the Speedy Trial Act are § 3161(h)(1) and § 3161(h)(8)(A).

546

## A. *Waiver*

Those circuits which have squarely confronted the issue of waiver have concluded that 18 U.S.C. §§ 3161(c)(1) and 3162(a)(2) foreclose a defendant's right to waive a speedy trial. *United States v. Willis*, 958 F.2d 60, 63 (5th Cir.1992); *United States v. Kucik*, 909 F.2d 206, 210–11 (7th Cir.1990), *cert. denied*, 498 U.S. 1070, 111 S.Ct. 791, 112 L.Ed.2d 853 (1991); *United States v. Berberian*, 851 F.2d 236, 239 (9th Cir.1988), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989); *United States v. Ray*, 768 F.2d 991, 998 n. 11 (8th Cir.1985); *United States v. Pringle*, 751 F.2d 419, 433–34 (1st Cir.1984); *United States v. Carrasquillo*, 667 F.2d 382, 388–90 (3d Cir.1982). The view that the Speedy Trial Act cannot be waived is puzzling given a recognition in the Act that it may be. Section 3162(a)(2) provides, in part, that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." Research has not revealed any case in which the Second Circuit has explicitly held that the Speedy Trial Act cannot be waived, although it has uncovered one case which implied that it can. *See United States v. Didier*, 542 F.2d 1182, 1187 (2d Cir.1976) ("Having been put on notice ... that responsibility for speedy trial enforcement rests primarily on the district courts and on the government, not on the defendant, the government should have attempted to obtain either a retrial within 90 day ... *or an explicit waiver of that 90 day period from appellant Didier* ") (emphasis added). In *United States v. Patten*, 826 F.2d 198 (2d Cir.1987), a waiver by virtue of § 3162(a)(8) was recognized.

An examination of two of the cases decided by the circuits which preclude a waiver is, however, revealing. In *United States v. Willis,* 958 F.2d 60 (5th Cir.1992), the district court conditioned granting the defendant's request for a continuance upon his surrendering his right to a speedy trial. He subsequently moved to set aside his conviction on the ground that the Speedy Trial Act was violated. The court granted his motion and reversed the conviction, but made the follow-ing observations before arriving at its decision:

Dismissing an indictment is a sharp remedy, and we have been reluctant to impose it where the defendant has induced the district court to misapply the Act and then relies upon that error to seek dismissal. *United States v. Eakes*, 783 F.2d 499, 503 (5th Cir.1986).... Where the defendant has successfully convinced the trial court that a continuance is appropriate under a provision of the Act and then later seeks to argue that the district court's ruling on the applicability of the exception was erroneous, "[w]e decline to apply a hypertechnical construction to the language of the Act" and will determine whether a continuance would have been appropriate under § 3161(h)(8).... 783 F.2d at 504. As we recognized in *Eakes,* allowing defendants to sandbag the district court would encourage harmful strategic behavior and straightjacket the district court in ruling under the Act.

\* \* \* \* \* \*

In short, we hold that dismissal of an indictment is inappropriate when a defendant requests a continuance under an erroneous interpretation or application of one of the Act's provisions and the district court simply errs in its application of the Act to the defendant's request. In those cases ... we will look to the circumstances surrounding the continuance and ask whether the district court could have granted a § 3161(h)(8) continuance.

*Id.* at 63–64. The dismissal of the indictment in *Willis* was based upon the circuit court's assessment that the district court was neither misled nor sandbagged by the defendant. "It (the district court) induced a 'waiver' and then asked the defendant to advise the court when he was ready for trial." *Id.* at 64. In that respect, *Willis* is plainly distinguishable.

Observations made by the court in *United States v. Pringle*, 751 F.2d 419 (1st Cir.1984), are peculiarly apt to this case:

Under the Act a waiver ought not to be allowed by the district court and has no effect on a defendant's right to dismissal. Nevertheless, we hold that where a waiver

creates delay, such delay will be excludable. *Defense counsel, as officers of the court, have a responsibility to keep in mind the twofold purpose of the Speedy Trial Act:* the interest of the defendant in a speedy trial and the interest of the public in a speedy trial. To the extent the Act protects the defendant's interest, it places limits primarily on the actions of prosecutors and courts; *to the extent that the Act protects the public's interest in a speedy trial, it places limits on the actions of defense counsel as well. Defense counsel may not simultaneously use the Act as a sword and a shield. We think it unethical and dishonest for defense counsel to waive the Act in the trial court and then disclaim such waiver on appeal.*

*Id.* at 434–35 (emphasis added). In accord with that view, *see United States v. Kucik,* 909 F.2d 206, 210–211 (7th Cir.1990); *United States v. Kington,* 875 F.2d 1091, 1108 (5th Cir.1989); *United States v. Mentz,* 840 F.2d 315, 331 (6th Cir.1988); *see also United States v. Vasquez,* 918 F.2d 329, 337 (2d Cir.1990) (the Speedy Trial Act was not meant to be applied so as to "give gamesmanship priority over the practicalities of trial management.").

The chronological record of events leading up to defendant Thomas Gambino's motion to dismiss make it inconceivable that the public interest will be served by a dismissal of this indictment. The defendant requests that he be tried alone upon the original indictment and seeks its dismissal. He thus makes plain that his real objective is to obtain a severance and, towards that end, brandishes the Speedy Trial Act as a sword. He joined in the requests of his present co-defendants for a continuance and beseeched the court to delay his trial for two months beyond its scheduled date; nevertheless, with a candor that can only be characterized as remarkable, he espouses "the truth ... that the Speedy Trial Act is obviously designed to take advantage of government errors." The dismissal of this indictment for that reason "rather than build confidence in the fairness of our criminal justice system, ... would be a mockery of it and would justify the citizenry in rising up to destroy the temples of justice.... If the public interest is a valid concern, as it should be, it will not be served by such a perversion of justice." *United States v. Russo,* 550 F.Supp. 1315, 1316–17 (D.N.J.1982). In the course of a colloquy between the court and counsel during the proceedings on February 19, 1993, the court voiced its unawareness of any authority to suggest that equitable considerations were relevant in making determinations concerning the Speedy Trial Act. (Tr. Feb. 19, 1993, at 21–22). Enlightenment in that regard was subsequently provided by *Russo, supra,* at 1320–21, where such considerations were regarded as relevant.

Were this court to grant the defendant Thomas Gambino's motion to dismiss, it would grant that motion without prejudice. The statute, 18 U.S.C. § 3162(a)(2), specifies with particularity the factors to consider in determining whether to dismiss a case with or without prejudice, and they are: "The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *United States v. Taylor,* 487 U.S. 326, 333, 108 S.Ct. 2413, 2417, 101 L.Ed.2d 297 (1988); *United States v. Kiszewski,* 877 F.2d 210, 213 (2d Cir.1989). The offenses with which Thomas Gambino was charged in the original indictment, conducting or participating directly or indirectly in the conduct of the affairs of an enterprise through a pattern of racketeering activity or the collection of unlawful debt (18 U.S.C. § 1962(c)) and conspiracy to violate § 1962(c) (18 U.S.C. § 1962(d)), are serious in that each is punishable by imprisonment for twenty years. The facts and circumstances leading up to a dismissal are recounted above and do not warrant even an inference that the government was indifferent to a prompt prosecution of Thomas Gambino, nor is there any suggestion that the United States Attorney for this district has been anything but sedulous in complying with the Speedy Trial Act. On the contrary, insofar as it sought to join two additional defendants with Thomas Gambino, the government furthered the purposes of that Act as is reflected in § 3161(h)(7). The comments on that section of then-Assistant Attorney General William

H. Rehnquist in letters dated October 19, 1971 to Senator Ervin and in the 1979 Senate Committee Report 24–25, to be found in Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974* (Federal Judicial Center, 1980) at 134–36, recognize "the utility of multi-defendant trials to effectuate the prompt and efficient dispensation of criminal justice" and that "defendants who are properly charged with the joint commission of an offense should ordinarily be tried together to save the time, expense and inconvenience of separate prosecutions."

It would surely be a mockery of our criminal justice system if that system would require the defendant to be reindicted after a dismissal without prejudice. Insistence upon such a slavish adherence to a purposeless formalism serves neither the interests of justice nor the spirit and intent of the Speedy Trial Act. It would, instead, validate the defendant's view that "the Speedy Trial Act is obviously designed to permit defendants to take advantage of government errors."

B. *Relevance of Other Provisions*

The defendant, as the court previously noted, asserts that the only provisions of the Speedy Trial Act having relevance to his motion are §§ 3161(h)(1) and 3161(h)(8)(A), neither of which, the court agrees, is applicable. I now turn to an examination of his assertion that those provisions are the only two that are relevant.

Section 3161(h)(6) provides that the following period of delay shall be excluded in computing the time within which a trial must commence:

> If the ... indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

The moving defendant does not make any Speedy Trial Act claim based upon any prosecution delays prior to the end of the original trial on April 2, 1992, when Gotti and Locas-

cio were found guilty. He contends that the Speedy Trial Act violation occurred during the intervening period between the end of the Gotti trial (which he fixes as March, 1992, when the case was submitted to the jury) and August 4, 1992, the date of the superseding indictment.

It is readily apparent that had the government moved to dismiss the indictment immediately upon the conclusion of the original trial, the intervening period would have been excludable from Speedy Trial Act calculation pursuant to § 3161(h)(6) and there would be no violation of that Act. *See, e.g., United States v. Bounos,* 730 F.2d 468 (7th Cir.1984); *United States v. Rodriguez–Restrepo,* 680 F.2d 920 (2d Cir.1982). Therefore, to apply the Speedy Trial Act in the current context would surely be exalting form over substance and would, indeed, affirm the defendant's view that "the truth is that the Speedy Trial Act is obviously designed to permit defendants to take advantage of government errors." It would also affirm the view that such an application of the Speedy Trial Act would make a mockery of our criminal justice system. This observation is particularly true given the defendant's assertion that "[t]he only fair way to cure the prejudice from this delay is to sever Mr. Gambino from his codefendants or to permit him to go to trial on the original indictment in this case." (Memorandum of Law in Support of Defendants' Pretrial Motions, at 2). The defendant's cynical objective in filing this motion is thereby made apparent: (1) A severance from his codefendants will, in some inexplicable way, cause the Speedy Trial Act to disappear, or (2) going to trial on the original indictment, which is twenty months older than the superseding indictment, will, in some inexplicable way, make the Speedy Trial Act disappear. In either case, what he seeks is to be tried alone, using the Speedy Trial Act as the vehicle for accomplishing that result.

Another potentially applicable section of the Speedy Trial Act is § 3161(h)(7), which provides for the exclusion of periods of delay in computing the term within which a trial must begin as follows:

> A reasonable period of delay when the defendant is joined for trial with a code-

fendant as to whom the time for trial has not run and no motion for severance has been granted.

The meaning of this section is ambiguous, lending itself to at least two interpretations, as follows: One interpretation would require A and B to be indicted together. Subsequently, excludable delay is attributable to A. A unitary view of the speedy trial clock would result in a holding that the speedy trial clock, having stopped as to A, stopped as to B as well. There is considerable authority reaching that result on those facts. A second interpretation would be supported in a case in which A is initially indicted alone. Later, a superseding indictment is returned in which A is joined with B as to whom the time for trial has not run. If the period of delay in joining codefendant B with A is reasonable and no motion by A for a severance has been granted, the time for trial of A will run in tandem with the time of trial for B. That is to say, the reasonable period of delay is excludable. Although judicial authority in support of this latter interpretation is less explicit, such authority exists and is properly applied to the facts of this case.

First, in support of the latter interpretation are the frequently made observations that rigid time limits will force the courts to disregard the principle of judicial efficiency; that "defendants who are properly charged with the joint commission of an offense should ordinarily be tried together to save the time, expense and inconvenience of separate prosecutions." Partridge, *Legislative History of the Title I of the Speedy Trial Act of 1974* (Federal Judicial Center, 1980) at 136; *see also United States v. Gambino,* 784 F.Supp. 129, 138–39 (S.D.N.Y.1992). Those observations were echoed by this court when, in denying defendant Thomas Gambino's motion to sever made in September, 1992—twenty-one months after he was indicted—it observed: "A severance just really is not appropriate in this case.... [i]t becomes clear to me that I would be trying the same case, the government would be retrying the same case, playing the same tapes, listening to the same witnesses, playing the same videos, which would not be a very good use of judicial resources." (Tr. Oct. 2, 1992, at 10).

*See also United States v. Felton,* 592 F.Supp. 172, 185 (D.C.W.D.Pa.1984).

Second, although the court has been unable to find a judicial determination of the applicability of § 3161(h)(7) to the precise facts now at issue, it is persuaded by determinations made on facts which are reasonably analogous that the section is applicable and justifies a denial of the defendant's motion. In *United States v. Tobin,* 840 F.2d 867 (11th Cir.1988), A and B were indicted on June 19, 1985. The statutory period would have run on August 29, 1985. The case was first noticed for trial on November 27, 1985. At a calendar call on December 12, 1985, A announced that he was ready for trial. The government stated that B had not yet been arrested and was a fugitive. The court continued the case until a reasonable time after B was apprehended. On February 28, 1986 A moved to dismiss the indictment on Speedy Trial Act grounds. On March 5, 1986 A was severed and subsequently found guilty on October 27, 1986. On appeal, A argued that § 3161(h)(7) was applicable only where two or more defendants were joined over whom the court had jurisdiction. The Eleventh Circuit held that the delay attributable to B is excludable as to A as long as it was reasonable. In concluding that the delay of eight months and ten days was reasonable, the court looked to the "totality of the circumstances prior to trial" and found that the delay was necessary in an attempt to achieve a joint trial. *Id.* at 869–70. The distinction between an initially indicted codefendant who was a fugitive, was never arraigned, and over whom the court never had jurisdiction and the codefendants here is difficult to grasp. The indictment of these codefendants four months after the Gotti trial ended, judged by the totality of the circumstances explained by the government, *supra* at p. 543, for the purpose of achieving a joint trial was plainly reasonable. The government should not be forced to prosecute the first defendant separately at the risk of a speedy trial dismissal.

In accord with *Tobin,* is *United States v. Pena,* 793 F.2d 486 (2d Cir.1986), in which a reasonable period of time for the apprehension of an indicted codefendant was excluded pursuant to § 3161(h)(7), the court observ-

ing: "Congress clearly intended that, where appropriate, joint trials of defendants should continue to be available as a means of promoting judicial efficiency by avoiding duplicative proof at successive trials. It thus intended that reasonable speedy trial time be excludable, under section 3161(h)(7) when necessary to enable joint trials to go forward." *Id.* at 489–90. Similarly, in *United States v. Piteo*, 726 F.2d 50 (2d Cir.1983), the defendant had originally been indicted alone, and a superseding indictment added his sister as a codefendant. The Second Circuit held:

> [I]n cases involving multiple defendants only one speedy trial clock, *beginning on the date of the commencement* of the most recently added defendant need be calculated under 18 U.S.C. § 3161(h)(7).... In this computation, a delay attributable to any one defendant is chargeable only to the single controlling clock.... So long as the defendants in question are brought to trial within the seventy speedy trial days that began with the clock of the most recently added defendant and so long as any delay is "reasonable," the Speedy Trial Act is not violated.

*Id.* at 52 (emphasis added). Equally compelling is *United States v. Novak*, 715 F.2d 810 (3d Cir.1983). A superseding indictment, joining the defendant with seven others was filed two months after the original indictment. In addressing a speedy trial issue raised on appeal, the court said:

> We believe that section 3161(h)(7) represents a congressional effort to build into the Speedy Trial Act sufficient flexibility to allow the government to stop criminal activity by arresting the suspected perpetrators as soon as it has probable cause, without precluding a joint trial with compatriots who may be apprehended at a later date. We believe that it is consistent with this congressional intent to apply section 3161(h)(7) so that after defendants are joined for trial, "an exclusion applicable to one defendant applies to all codefendants" ... subject to the reasonableness constraint.

*Id.* at 815.

For all of the foregoing reasons, the motion by Thomas Gambino to dismiss based upon a violation of the Speedy Trial Act is denied.

## II

### Venue

The government does not oppose the defendants' motion to dismiss Count Three and it is, therefore, granted. Other aspects of the defendants' motion addressed to venue were withdrawn.

## III

### Surplusage

 The defendants move, pursuant to Fed.R.Crim.P. 7(d), to have portions of the indictment contained in paragraphs 1–13, which constitute the Introduction to all counts, stricken as prejudicial surplusage. The governing principle in such a motion is that it "will not be granted unless 'it is clear that the allegation complained of is not relevant to the charge contained in the indictment and is inflammatory and prejudicial.' ... An indictment may properly include any allegation that is 'relevant to the case and will constitute part of the government's proof at trial.'" *United States v. Rastelli*, 653 F.Supp. 1034, 1055 (E.D.N.Y.1986); *United States v. Castellano*, 610 F.Supp. 1359, 1428 (S.D.N.Y.1985); *United States v. Persico*, 621 F.Supp. 842, 860 (S.D.N.Y.1985). The parties agreed, at oral argument, that a ruling on this aspect of the motion, involving as it does a balancing of the probative value of relevant evidence against the prejudicial impact of such evidence, should await the trial when evidentiary rulings can be made in context. In the interim, the parties also agreed, neither the government nor the court should refer to the challenged portion of the indictment. The court is in accord with that agreement and hereby so orders it insofar as it precludes the government from reading or referring to the challenged portions of the indictment in its opening statement. The court, on its part, will refrain from doing the same in selecting the jury.

## IV

### Motion to Preclude Evidence of "Truth–Telling" Provision

■ The defendants move the court to issue an order that would preclude the government from proving the "truth-telling" provisions of Salvatore Gravano's plea agreement. They rely upon Rule 403, Fed. R.Evid., in support of their motion and also upon the completely speculative assumption that "In reality, as informers have come to know from a course of prosecutorial behavior, their sword of Damocles is illusory." (Defendant's Memorandum in Support of Pretrial Motions at 22). In making that motion, the defendants candidly concede that the authority in this circuit is that an entire plea agreement may be offered by the government and received in evidence after the credibility of the witness has been attacked. *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir.), *cert. denied*, 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988); *United States v. Borello*, 766 F.2d 46, 56–57 (2d Cir.1985). The court will not unduly burden this opinion by a lengthy refutation of what it regards as a motion entirely devoid of merit if not entirely specious. It resists the temptation to do so in the belief that the observation of Judge Learned Hand is an eloquent response to and refutation of that motion. In *DiCarlo v. United States*, 6 F.2d 364, 368 (2d Cir. 1925) he wrote:

> While, of course, we recognize that the prosecution is by custom more rigidly limited than the defense, we must decline to assimilate its position to that of either judge or jury, or to confine a prosecuting attorney to an impartial statement of the evidence. He is an advocate, and it is entirely proper for him as earnestly as he can to persuade the jury of the truth of his side, of which he ought to be thoroughly convinced before he begins at all. To shear him of all oratorical emphasis, while leaving wide latitude to the defense, is to load the scales of justice; it is to deny what has always been an accepted incident of jury trials, except in those jurisdictions where any serious execution of the criminal law has yielded to a ghostly phantom of the innocent man falsely convicted.

It follows inevitably, that to shear the prosecution of all admissible evidence while leaving wide latitude to the defense, is similarly to unbalance the scales of justice. This aspect of defendants' motion is denied.

## V

### Motion to Compel Disclosure of Government Dealings with Cooperating Witnesses

■ The defendants seek an order that would compel the government to disclose its history of dealing with cooperating witnesses who did not tell the truth in the event the court denied their motion to preclude the "truth-telling" provision of Salvatore Gravano's plea agreement. More specifically, they ask the government to be compelled to produce: (1) the identity of every cooperating witness who has admitted lying to the government; (2) the identity of every cooperating witness the government believes lied to it; and (3) detailed accounts of the actions taken with respect to each of these witnesses. This motion is frivolous, at best, and is denied.

■ This motion is predicated upon the unsubstantiated premise that the government never prosecuted a cooperating witness who violated his "truth-telling" obligation of his plea agreement. If, in fact, such is the case, it may be because cooperating witnesses have been testifying truthfully, or because the government, upon subsequently learning that the witness did not testify truthfully chose not to prosecute in the proper exercise of prosecutorial discretion. That is not to say, however, even assuming the premise, that the government will not in the future prosecute cooperating witnesses who commit perjury. In this regard, it is appropriate to note that the prosecution has a constitutional obligation to report to the defendant and to the trial court whenever government witnesses lie under oath. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984).

In addition, the information the defendants seek, assuming it could be gathered, would surely require a small army of investigators combing through every criminal prosecution

ever brought in which a cooperating witness testified and then attempting to determine, in some unimaginable way, whether the cooperating witness lied. The absurdity of this request is self-evident. It might also be added that assuming such a task could be accomplished in some undefinable period of time, the information, if relevant at all, would be precluded under Rule 403, Fed.R.Evid., for the reasons that such minuscule probative value as this evidence would have would be overwhelmingly outweighed by the dangers of confusion, misleading the jury, and considerations of undue delay and waste of time.

## VI

*Disclosure of Psychological and Polygraph Reports of Salvatore Gravano and Surveillance Reports of Thomas Gambino*

The defendants seek the disclosure of results of psychological examinations and polygraph tests concerning Salvatore Gravano pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government, in its responsive memorandum, states that Gravano has not yet been examined by a psychologist. The government also acknowledges awareness of its constitutional obligations under *Brady* and its progeny and promises to provide the defendants with material consonant with that obligation. In the event the government is in doubt as to whether material it possesses is embraced by *Brady*, it may submit it to the court for *in camera* review.

■ The defendant Thomas Gambino also requests the court to direct the government to make available to him all its surveillance reports of Thomas Gambino. His entitlement to those reports, he claims, is mandated by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). More specifically, Thomas Gambino contends, surveillance reports which reflect that he has not been observed with others with whom he is alleged to have been allied would tend to prove that he did not occupy the supervisory position the government ascribes to him.

This court was confronted with this precise issue in *United States v. Scarpa*, 897 F.2d 63 (2d Cir.1990). There, the defendants sought discovery pursuant to Rule 16(a)(1)(A), Fed. R.Crim.P., of electronic surveillance tape recordings made by the Kings County District Attorney at a social club the defendants frequented. Notwithstanding the absence of any exculpatory material subject to production under *Brady*, the defendants argued that the entirely pedestrian conversations intercepted makes them relevant as probative of their innocence. This court's refusal to order disclosure of the tapes was affirmed by the circuit court which held that "A defendant may not seek to establish his innocence, ... through proof of the absence of criminal acts on specific occasions." 897 F.2d at 70. The defendant's gloss upon the holding of this court and the circuit court, suggesting that those holdings were based upon "the result of minimization efforts," is not supported by a reading of either the circuit court's opinion or this court's Memorandum and Order dated May 16, 1988. At page 9 of that Order, this court wrote:

> As the government points out, however, the movants are effectively arguing that the very irrelevance of these statements makes them relevant. The defendants cannot hope to use a process of elimination to defend themselves by presenting evidence of their *noncriminal* activities. Such evidence would only be relevant if the indictment charged the defendants with ceaseless criminal conduct. Furthermore, the government convincingly explains the lack of inculpatory evidence on the tapes as the result of minimization efforts by the Kings County District Attorney, and the technical limitations of the eavesdropping device.

The government is cognizant of its *Brady* obligations and will make known to the defendant any exculpatory information the surveillance logs contain.

## VII

*Advance Notice of 404(b) Evidence*

The defendants have requested that the government provide reasonable notice in advance of trial of all evidence the government intends to offer pursuant to Rule 404(b), Fed.R.Evid. This aspect of the motion is

granted. The government has acknowledged its obligation to provide the information requested and its intention to discharge its obligation.

### VIII

*Motion to Suppress January 17, 1986 Conversation Between Gotti and Remini*

 The defendant Thomas Gambino seeks this relief claiming that because he gave immunized testimony before the grand jury concerning this conversation, the transcript of which is known to the prosecutors in this case, the government has acquired a tactical advantage. The prosecutors, in response, deny any familiarity with that testimony. Be that as it may, the defendant recognizes that this motion must be and is hereby denied by virtue of *United States v. Riviecco*, 919 F.2d 812 (2d Cir.1992). He has made the motion solely for the purpose of preserving the issue for review at a later date should the need to do so arise.

SO ORDERED.