UNITED STATES of America,
Plaintiff-Appellee,

v.

Walter H. JOHNSON, Defendant-
Appellant.

No. 73–1225.

United States Court of Appeals,
Fifth Circuit.

Jan. 11, 1974.

Rehearing Denied Feb. 20, 1974.

**1320**

Cecil M. Burglass, Jr., F. Irvin Dymond, New Orleans, La., for defendant-appellant.

Donald E. Walter, U. S. Atty., D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., for plaintiff-appellee.

Before TUTTLE, BELL and GOLDBERG, Circuit Judges.

BELL, Circuit Judge:

The result of this disjointed and to some extent obfuscated appeal is an affirmance in part and a remand in part for determinations on two matters. The first is whether a key prosecution witness' post-trial deposition warrants a new trial on grounds of newly discovered evidence. The second is whether prosecutorial misconduct suggested by the deposition actually occurred, and if so whether it accords appellant the right to a new trial.

In a jury trial, appellant was found guilty of mail and securities fraud[1] in his activities as principal salesman of the promissory notes of Professional Service Corporation (P.S.C.).[2] It is largely uncontroverted that he sold some $4 million of these securities over an eleven-year period, that he received over $750,000 for his efforts, and that he made grossly erroneous representations to potential investors. His primary defense was that he lacked the requisite scienter, in that he was unaware of P.S.C.'s insolvent and profitless condition. This defense was attacked most directly by Parker, a co-defendant turned government witness, who testified to appellant's familiarity with P.S.C's finances and to his knowing participation in the production of fraudulent sales literature. In August, 1972, five months after the trial, Parker recanted[3] his testimony, claiming that he had perjured himself under the "programming" of government agents, and that he had done so in order to preserve a plea bargain relieving him of all but one count of his own six-count indictment. Appellant then filed a motion for judgment of acquittal, and supplemented an earlier motion for a new trial. On September 1, 1972, the trial court denied each motion and imposed sentence. In February, 1973, some five months after this appeal was filed, appellant filed three additional motions, for a new trial, to vacate judgment, and to recuse the trial judge from consideration of these motions. The grounds asserted were that Parker had been indicted for perjury and that the judge had displayed prejudice. These motions also were denied and appellant's brief incorporates his appeal from their

---

1. The indictment charged violations of 15 U.S.C.A. § 77g(a), 18 U.S.C.A. § 1341, and 18 U.S.C.A. § 371.

2. Appellant's co-defendant, who had been P.S.C.'s attorney as well as an officer, director, and stockholder, was acquitted by the same jury.

3. We will consistently refer to Parker's "recantation," or to his having "recanted." In so doing we do not suggest that he has disclaimed all or even large portions of his testimony. As will be developed below, he has directly and specifically challenged very little of what he stated at trial.

denial into this appeal from the original post-trial rulings.

## I.

We will initially dispose of the three motions filed in 1973. When a case is on appeal the trial court has no jurisdiction to entertain such motions. United States v. Warren, 2 Cir., 1972, 453 F.2d 738, 744; United States v. Brown, 2 Cir., 1964, 335 F.2d 170; Rule 33, F.R.Crim.P. Thus the trial court's order denying these motions must be vacated.

The proper procedure for obtaining judicial consideration of post-appeal motions is to move that the circuit court remand for good cause shown. Cf. Beckwith v. United States, 10 Cir., 1966, 367 F.2d 458, 461. In order to prevent repetitive rulings, we have treated the post-appeal motions as directed to this court in accordance with accepted procedure. We find that they raise no grounds for post-trial relief that were not raised in the original post-trial motions.[4] Thus they are wholly insufficient to justify remand for further trial court consideration. Cf. Horne v. United States, 4 Cir., 1931, 51 F.2d 66.

## II.

As for the original post-trial motions, the motion for judgment of acquittal was not timely filed. See Rule 29(c), F.R.Crim.P. Thus on remand the district court should vacate its order and dismiss the motion for want of jurisdiction.[5] See Rowlette v. United States, 10 Cir., 1968, 392 F.2d 437, 439.

The trial court's denial of the original motions for new trial is properly before this court. We will first deal with three issues raised in the motion filed shortly after the jury verdict. We will then consider the more difficult issues raised by the subsequent motion based on the newly discovered evidence contained in Parker's recantation.

Appellant contends his right to counsel was violated by arraignment without counsel. This contention is without merit. The arraignment was a perfunctory proceeding at which the judge entered an automatic plea of not guilty as to all defendants and allowed sixty days for further pleadings. Appellant was offered appointed counsel but declined the offer because he wished to retain a lawyer on his own. In addition, appellant was accompanied at arraignment by his brother, a lawyer. Finally, no objection to the arraignment procedure was made until almost two years later, after trial had commenced.

Appellant also contends that the prosecution deliberately suppressed certain documentary evidence tending to impeach Parker's credibility. Involved are four checks, payable to appellant, on which Parker had forged appellant's endorsement. This contention is without merit for several reasons. First, nothing suggests the government was responsible for the checks being unavailable—they were somewhere among sever-

---

4. The original post-trial motions raised the claim that Parker's testimony was perjured. The only additional material in the post-appeal motions to vacate judgment and for a new trial was the fact that Parker's recantation had resulted in a perjury indictment. However, this indictment specifies as acts of perjury not his testimony at appellant's trial, but rather his subsequent testimony that he had, under government "programming," perjured himself at the trial. Thus, by indicting Parker the government in no way vouched for the claim, presented to the trial court and, by appeal, to this court, that appellant's conviction was the product of perjured testimony and government misconduct.

As for the motion to recuse the trial judge from consideration of the post-appeal motions, it does present new material, but it is mooted by our disposition of the motions to vacate judgment and for a new trial.

5. We note that while this disposition of the motion for judgment of acquittal deprives appellant of a potential remedy on this appeal, it does not limit the scope of our review of the proceedings below. This is because the motion for judgment of acquittal raised no contentions not also raised in the motions for new trial.

al truckloads of documents involved in P.S.C.'s bankruptcy proceedings; while known to appellant throughout the criminal proceedings, he did not subpoena them until after the trial commenced. Second, appellant was not harmed by his inability to introduce the checks into evidence, inasmuch as Parker admitted before the jury that he had made such forged endorsements (he explained that he had done so with appellant's permission).

■ The final point on appeal from the initial motion for new trial concerns the trial judge's participation by way of anecdotes, rambling stories and questioning of witnesses. The only specific incident discussed in appellant's brief concerns the judge's analogy to a case tried by his father in which a former Louisiana governor, Richard Leche, was convicted of mail fraud. While we do not endorse this potentially prejudicial method of explaining the law to a jury, we note that the matter arose in the limited context of the nature of the intent to use the mails required by the mail fraud statutes—a matter as to which there was no factual dispute in this case. The trial judge did not otherwise suggest that appellant's case was like Leche's and we cannot conclude that denial of the motion for new trial was an abuse of the trial court's discretion.

■ Appended to appellant's brief is an affidavit in which his trial attorney lists other rambling anecdotes, and also charges the trial judge with visible bias and improper participation in the questioning of witnesses. Since this affidavit is not part of the record, and since it is argumentative and conclusory, we will treat it not as factual material but as part of the brief. Dispite its charges of bias and prejudice, nowhere does it direct us to specific points in the record where the trial judge behaved improperly, where objections to his comments were made, or where objections were made to omissions by the court reporter of the judge's comments. Noting further that the charge to the jury was entirely correct and unbiased, and that it clearly delineated the judge's role in the fact-finding process, we conclude that denial of the motion for new trial on these grounds was not erroneous.

### III.

Appellant's primary attack on his conviction is contained in the supplement to his original motion for new trial. It is based on Parker's testimony and subsequent recantation, and on the prosecution's conduct with regard to that testimony. We understand his claim to be two-fold: first, that the new evidence created by the recantation justifies a new trial; and second, that a similar result should follow from each of three instances of possible prosecutorial misconduct, two alleged in Parker's recantation, and the other apparent on the face of the record. Before turning to the recantation, we will consider the last-mentioned instance of questionable conduct. To do so it is necessary to more fully develop the facts involved.

Parker was the primary promoter of P.S.C., and had been indicted on six counts of mail and securities fraud. Shortly before trial he agreed to plead guilty to one count with the understanding that the remaining counts would be dropped if he testified fully and truthfully against the other defendants. So far as was revealed at trial, no promises whatsoever were made as to his sentence, and he correctly understood the maximum to be 5 years and a $10,000 fine.

After his damaging direct testimony, Parker was subjected to several days of intense cross-examination by attorneys for appellant and his co-defendant. One attack on Parker's credibility focused on whether he was motivated by a government promise of favorable treatment. The following occurred:

> MR. DYMOND: [Attorney for appellant's co-defendant]: "Mr. Parker, am I correct in understanding—you are sitting there under oath now—you are telling me you have no understanding

as to the intended dismissal by the Government of the first five counts of this indictment against you?

MR. PARKER: "I am telling you I have no deal with the Government. I pleaded guilty to a count that carries a five year prison term and $10,000 fine."

MR. DYMOND: "Have you been led to believe by anybody that the remaining counts are going to be dismissed against you?"

MR. PARKER: "I been led by nobody about anything."

MR. DYMOND: "If you don't know what is going to happen to those other five counts, what are you doing testifying?"

MR. PARKER: "My attorney advised me to do this and I did it exactly as he advised me."

MR. DYMOND: "You wouldn't say you are doing this through a sense of rightousness?"

MR. PARKER: "I did it because my attorney advised me to do it as I testified before."

MR. DYMOND: "Did your attorney tell you the remaining five counts were to be dismissed against you?"

MR. PARKER: "My attorney did not."

MR. DYMOND: "Has anybody told you that?"

MR. PARKER: "I don't recall anybody telling me that."

MR. DYMOND: "You don't have any doubt you would recall that if it was told you, do you, Mr. Parker?"

MR. PARKER: "I don't believe I have any doubt."

MR. DYMOND: "Would you definitely and unequivocably state nobody told you these five counts would be dismissed against you?"

MR. PARKER: "No, sir, I have not been told."

THE COURT: "There were no plea bargains made by this Court and I specifically asked Mr. Parker whether anyone connected with the Government, or anyone else, including his attorney, had made any promises, or threats, or inducements, coercion, or anything of that nature, to cause him to enter a plea guilty."

MR. DYMOND: "If the Court please, I would like to call on the Government right now to inform the Court whether an agreement has been made to dismiss the remaining five counts against Mr. Parker."

MR. PERKINS: "The answer is 'No'."

MR. DYMOND: "As to whether any suggestion that will be done has been made to the attorneys, to Parker or anyone else?"

MR. PERKINS: "We haven't talked to Mr. Parker about this matter at all. Mr. Walter is the United States Attorney and he talked to Mr. Parker's counsel about this matter. His name is Winsberg. He had a discussion with him about this case. When I saw Mr. Parker, I saw him in the courtroom when he entered a plea and I didn't have any discussion with him at all."

Were this the end of the affair appellant would clearly be entitled to a new trial under Giglio v. United States, 1972, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104, in which the prosecution's failure to disclose a plea bargain with one of its witnesses was held to be a denial of due process. See also Brady v. Maryland, 1962, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215.

However, here a recess was held shortly after the quoted testimony, and before trial resumed the judge was apprised of the bargain. Further, Parker's attorney, Winsberg, was called to testify about the plea bargain, and was not cross-examined by the government. Defense attorneys made no motions for directed verdict or mistrial, and clearly were satisfied to have Winsberg truthfully reveal the bargain to the jury. They subsequently pointed to both the bargain and Parker's disclaimer of it in

attacking his credibility. The trial judge twice instructed the jury that inducements to testify are to be considered in determining credibility, and he did so specifically in the context of plea bargaining. Finally, in the prosecution's rebuttal arguments to the jury, the fact of the bargain was tacitly acknowledged.

In these circumstances we cannot conclude that the prosecution's initial lack of candor deprived appellant of due process. We are not, however, favorably impressed by the prosecution's conduct. Initially denying a bargain created confusion that was remedied only after the unnecessary expense and delay of several conferences and the testimony of an out-of-town attorney. The prosecuting attorney explained to both the trial court and this court that he thought he was responding to questions whether he personally had bargained directly with Parker, and whether Parker had been unconditionally promised that the other five counts would be dismissed (whereas their dismissal was conditioned on Parker's truthfully testifying). Without commenting on this explanation, we do express the opinion that it would be preferable for the prosecution to accord more attention to the substance of the defense's inquiry and less to hair-splitting distinctions.[6]

### IV.

This brings us to Parker's recantation of his trial testimony by means of a sworn deposition made in prison after he received the maximum sentence of 5 years and a $10,000 fine.[7] The gist of the deposition is that Parker had been "programmed" by government attorneys to give the testimony they wanted. This was accomplished, says Parker, by repeated threats to prosecute him on the remaining counts in the indictment, and by repeated suggestions that he "really meant" something other than he initially stated and believed to be true. We have carefully studied Parker's deposition. For the most part it establishes no more than that he underwent intensive coaching prior to trial, in order to freeze his testimony, to prevent unexpected responses, and to assure that he would provide critical information in his initial answers and without the necessity of tedious, repetitive pinpoint questioning. This is not improper, so long as the testimony actually given is truthful. In this regard, Parker specifically points to only one area of testimony, that concerning the plea bargain, as having been perjured. He acknowledges that he knew of the deal, and further claims that the government attorneys promised to intercede in his behalf to assure a sentence of no more than three years. In addition he *suggests* that he lied, in conformity with prosecution instructions, when he testified that he and appellant had been aware of P.S.C.'s financial plight since 1959—Parker now claims he initially and truthfully told the government attorneys that this date was 1968, although his deposition is so imprecise that it does not logically exclude the possibility that appellant had the requisite scienter.[8]

As noted above, Parker's deposition is presented as grounds for retrial on two different theories, that of newly discovered evidence and that of prosecutorial misconduct. We first consider the

---

6. We also note, with disapproval, the silence of the second government attorney; unlike the government's principal trial counsel, he had been present when the plea bargain was struck with Parker's attorney.

7. In January, 1973, Parker testified, to similar effect, at a hearing on his own motion to reduce sentence. It was this subsequent testimony that led to his perjury indictment. This testimony is not a part of the record of appellant's case and has not been considered by this court.

8. In his testimony Parker swore to appellant's knowledge as of 1959 that P.S.C. was not making a profit and was in some sense "insolvent." In the deposition he appears to acknowledge that appellant had long been aware that P.S.C. was profitless, but also claims that it was not until 1968 that he and appellant were aware P.S.C. would never be profitable.

new evidence approach. In this regard we must be mindful that, "motions for a new trial based on recanted testimony of a material witness are looked upon with the utmost suspicion," United States v. Nolte, 5 Cir., 1971, 440 F.2d 1124, 1128, and that, "Testimony which is merely impeaching or cumulative is not a sufficient basis for a new trial based on newly discovered evidence." United States v. Dara, 5 Cir., 1970, 429 F.2d 513, 514. Applying these standards, Parker's revelations about his plea bargain are not grounds for a new trial—the substance of the deal was before the jury through the Winsberg testimony, and the claimed promise of a low sentence would have served only as minor additional impeachment of Parker's trial testimony (we note that its credibility had already been heavily attacked by the existence of the deal, by Parker's initial disclaimer of it, and by other inconsistencies developed on cross-examination).

As for the testimony concerning knowledge of P.S.C.'s insolvent condition, we disagree with the trial court's conclusion that Parker's deposition fails to indicate he told a material lie during the trial. While the deposition does not state precisely what testimony Parker considers untruthful, or precisely what his new testimony would be, we think it strongly suggestive of perjured material testimony. We thus find it necessary to remand for a hearing directed to two issues: first, whether Parker's deposition is credible, in light of cross-examination and impeaching testimony from government witnesses, cf. United States v. Nolte, *supra*; and second, precisely what would be his new, credible testimony, if any, and whether it would satisfy the requirements for a new trial based on newly discovered evidence. See United States v. Dara, *supra*; United States v. Jacquillon, 5 Cir., 1972, 469 F.2d 380, 388.

## V.

There remains appellant's claim that prosecutorial misconduct justifies a new trial. We have already dealt with the alleged misconduct of failing immediately to inform the court of Parker's plea bargain. See pp. 1322–1324 *supra*. We now consider the deposition's suggestion of two specific instances of misconduct, to wit, the alleged promise of a low sentence which the prosecution did not reveal, and the prosecution's alleged instigation and tolerance of untrue testimony about appellant's knowledge of P.S.C.'s financial condition. Our guide in this matter is Giglio v. United States, *supra*, and the series of Supreme Court cases discussed therein. The rule is that presentation of known false evidence, and nondisclosure of evidence affecting credibility, are grounds for retrial if the deception was material, that is if. it might "in any reasonable likelihood have affected the judgment of the jury." *Giglio, supra*, 405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d 108. We are unable to say on this record that the deception alleged in Parker's deposition is not material within this definition. Thus it is necessary to remand for an adversary hearing to determine the truth about the prosecution's conduct of this case. Should the trial court determine that misconduct occurred, then it must proceed to determine whether the effect was material within the meaning of Giglio.[9]

In sum, we affirm in all respects save for two particular issues as to which we remand for evidentiary hearing and factual determinations, and save for our directions that the trial court vacate its orders concerning four post-trial motions over which it had no jurisdiction. The first of the remanded issues concerns the possibility that Parker presented perjured material testimony as to appellant's knowledge of P.S.C.'s finances.

9. It is not inconsistent to remand to consider the alleged promise of a low sentence in this prosecutoral misconduct context, but not in the context of the newly discovered evidence issue. The standards applicable in each instance are quite different, as should be apparent from a comparison of controlling cases. Compare United States v. Jacquillon, *supra*, with Giglio v. United States, *supra*.

**1326**

The trial court should consider this matter according to the standards governing recanted testimony of prosecution witnesses and retrials based on such newly discovered evidence. Second, the trial court must determine whether the prosecution engaged in misconduct by failing to reveal a promise to Parker of a low sentence, and by instigating and/or tolerating incorrect testimony about appellant's knowledge of P.S.C.'s finances. On this issue, the appropriate standards are those of Giglio v. United States, *supra*.

Affirmed in part, remanded in part with directions.