**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Antonio QUESADA, Alfredo Flores, a/k/a Ali and Maritza Brezot, Defendants-Appellants.**

**No. 74–2881.**

United States Court of Appeals, Fifth Circuit.

May 7, 1975.

Rehearing Denied June 11, 1975.

---

Miguel A. Suarez, Miami, Fla., for Quesada.

Ellis S. Rubin, Miami, Fla., for Flores.

Barry L. Garber, Miami, Fla., for Brezot.

Barbara E. Vicevich, Sp. Atty., U. S. Dept. of Justice, Crim. Div., Miami Strike Force, Robert W. Rust, U. S. Atty., Karen L. Atkinson, Samuel Sheres, Crim. Div., Dept. of Justice, Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and GODBOLD and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Maritza Brezot, Antonio Quesada and Alfredo Flores were convicted of conspiracy to receive, conceal, buy and sell unlawfully imported heroin in violation of 21 U.S.C. §§ 173 and 174. Flores argues that because he was illegally kidnapped into the United States by federal agents the court does not have jurisdiction over him. Quesada argues that the evidence was insufficient to convict and that statements of coconspirators were erroneously admitted against him. All three appellants urge that the prosecutor erred in discussing the case with a witness during a recess which occurred while the witness was on cross-examination. Find-

ing no merit in these contentions, we affirm.

Appellant Flores, a Venezuelan, argues that the trial court lacked personal jurisdiction over him because he was kidnapped into this country from his homeland by federal agents. He first raised this issue of no jurisdiction at his removal hearing in Puerto Rico. His motion to quash was denied and he was ordered removed to Miami. He did not renew the motion before the trial court but that court granted his motion to supplement the record on appeal by filing the transcript of the removal hearing and his affidavit and offer to prove the kidnapping.

■ In this court Flores contends that his forcible abduction by government agents violates the federal Kidnapping Act, the treaty between the United States and Venezuela, and the Charter of the United Nations, thereby depriving him of due process and Fourth Amendment guarantees. In United States v. Winter, 509 F.2d 975 (5th Cir. 1975) and United States v. Herrera, 504 F.2d 859 (5th Cir. 1974), we considered contentions similar to those now being asserted by Flores, and held that under present Supreme Court decisions, as well as decisions of this court, these arguments lack merit. Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421 (1886); United States ex rel. Lujan v. Gengler, 510 F.2d 62 (2nd Cir. 1975); United States v. Toscanino, 500 F.2d 267, reh. denied (2nd Cir. 1974); United States v. Caramian, 468 F.2d 1370, 1371 (5th Cir. 1972); United States v. Vicars, 467 F.2d 452, 455 (5th Cir. 1972).

■ Appellant Quesada alleges there was insufficient evidence that the substance he was involved with and sold was in fact heroin or that he knew it to be such. The evidence shows, however, that during the course of two separate transactions in which Quesada was intimately involved the substance was continuously referred to as the "very best" heroin in his presence and described by him as heroin in his conversations with others. It was a white powder, on both occasions it was sold to him for 20,000 dollars per kilo (one thousand grams) and he resold it after the buyers tested it and pronounced it to be heroin for 22,000 dollars per kilo. The product never came into the possession of the government, so a specific assay was impossible.

■ The introduction of a chemical analysis of the substance is not essential to conviction. United States v. Graham, 464 F.2d 1073 (5 Cir. 1972). The nature of the substance as a narcotic need not be proved by direct evidence if the circumstantial evidence presented establishes, as it did here, that beyond a reasonable doubt the substance was heroin. E. g., United States v. Gregorio, 497 F.2d 1253, 1263 (4th Cir. 1974); United States v. Jones, 480 F.2d 954, 960 n. 4 (5th Cir. 1973), cert. denied, Stockmar v. United States, 414 U.S. 1071, 94 S.Ct. 582, 38 L.Ed.2d 476 (1974); United States v. Atkins, 473 F.2d 308, 314 (8th Cir. 1973), cert. denied, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1974); United States v. Fantuzzi, 463 F.2d 683, 689 n. 7 (2nd Cir. 1972); United States v. Agueci, 310 F.2d 817, 828 (2nd Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12 (1963); Toliver v. United States, 224 F.2d 742, 745 (9th Cir. 1955). The evidence also disclosed that Quesada helped others weigh and package the substance and thus had possession of the drug. In Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, reh. denied, 397 U.S. 958, 90 S.Ct. 939, 25 L.Ed.2d 144 (1970), the Court held the government is entitled to an instruction that the jury may infer heroin which is within the United States was smuggled into the country and one who possesses heroin within the United States is charged with the knowledge that the drug was unlawfully imported. In addition to proof of constructive knowledge through possession, the government introduced testimony revealing that Quesada in fact had actual knowledge of the unlawful impor-

tation, *i. e.*, testimony that in Quesada's presence Flores stated that he had brought the heroin from Lebanon. The sufficiency of the evidence adduced against Quesada meets the test of Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941).

Appellant Quesada further argues that the government split its conspiracy indictments, naming the three appellants in one and two other coconspirators, Jose Avalos and Rudolfo Castrillon, in a separate indictment, and then proceeded to introduce testimony in the trial of Quesada implicating him in an overt act not alleged in the conspiracy indictment under which he was tried. The declarations complained of were made among Avalos, Castrillon and Inchaustegui and were related by Inchaustegui at trial.

[4, 5] Quesada contends that the separate indictments of Avalos and Castrillon both rendered them unavailable to him as witnesses and constituted the conspiracy charged against them a separate conspiracy from that charged against Quesada and his codefendants, and thus created a single-multiple conspiracy variance between the charge laid and the proof. These contentions are specious. The evidence established that Avalos and Castrillon made a buy of heroin from Inchaustegui and Quesada during the course of the conspiracy charged to Quesada. That this overt act was the basis for a separate indictment against Avalos and Castrillon does not establish that the sale was not a part of a single heroin marketing conspiracy by Quesada and his codefendants. The proof shows it was. Nor does the fact that this sale was not alleged as an overt act in the indictment against the latter preclude proof of it at their trial. "We have held before that the government is not limited to overt acts pleaded in proving a conspiracy. It may show other acts of the conspirators occurring during the life of the conspiracy." United States v. Perez, 489 F.2d 51, 70 (5th Cir.), reh. denied, 488 F.2d 552 (5th Cir. 1973); *accord,* United States v. Ayres, 434 F.2d 60 (5th Cir. 1970), cert. denied, 401 U.S. 938, 91 S.Ct. 930, 28 L.Ed.2d 217 (1971); Reese v. United States, 353 F.2d 732 (5th Cir. 1965); Finley v. United States, 271 F.2d 777 (5th Cir. 1959), cert. denied, 362 U.S. 979, 80 S.Ct. 1065, 4 L.Ed.2d 1014 (1960). Moreover, the mere fact that Avalos and Castrillon were separately indicted and separately tried does not demonstrate that they were unavailable to him as witnesses.

■ The proof furthermore established that Avalos and Castrillon were more than mere purchasers, they were shown to be actively engaged as coconspirators in the same conspiracy even though they were not named in the same indictment. Thus, their statements were admissible against Quesada.

■ Finally, all three appellants argue that they were so prejudiced by the conduct of the government's attorney in talking to a witness that a mistrial should have been declared or the witness' testimony stricken. At trial a named but unindicted coconspirator, Carlos Inchaustegui, and a convicted narcotics violator, Felix Olivera, testified against appellants. While Olivera was on cross-examination there was a recess during which he talked with the trial attorney representing the United States.[1]

---

1. All witnesses in this case had been "placed under the rule," a procedure intended to sequester a witness from the courtroom except when testifying. It is unclear, however, whether this conversation with counsel during cross-examination was expressly covered by "the rule." At oral argument counsel were requested to furnish a copy of "the rule" invoked by the district court to this court if available, but that has not been done. A defense counsel observed this intercourse and protested to the trial judge. Upon subsequent questioning from the court concerning the substance of their conversation, the attorney stated she told Olivera he was doing a good job, and not to fall into the trap the defense was trying to lay for him in regard to a previous misdemeanor conviction. Defense counsel asked for a mistrial or, in the alternative, that Olivera's testimony be stricken. The court chastised the attorney but denied further relief. When Olivera's cross-examination resumed he testified that he did not remember any mention of a trap.

Citing Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and United States v. Johnson, 487 F.2d 1318 (5th Cir. 1974), defendants contest the government's alleged failure to correct known false testimony, *i. e.,* Olivera's statement that he did not remember the part about the trap. *Giglio* and *Johnson* are inapposite. In the case at bar, the prosecutor had stated her recollection of the conversation before Olivera resumed his testimony. The defense used the information gained from this statement in their cross-examination. Olivera's testimony as to his recollection of the same conversation, while different, was not shown to have been false.

Defendants further contend that the conversation violated the court's rule and denigrated the right of cross-examination. The government urges United States v. Burke, 495 F.2d 1226 (5 Cir. 1974) should be applied. In that case, where the trial court allowed the prosecutor to work with a witness over the weekend on his upcoming cross-examination, we held that in the absence of a showing of prejudice the error was not reversible. In the circumstances of the case at bar the result is the same. Assuming arguendo that the actions of the trial attorney were erroneous, they were unknowingly so and did not affect any substantial rights of the defendants. Such an error would not dictate reversal, Fed.R. Crim.P. 52(a).

The convictions appealed from are Affirmed.