PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE
*952 On this day, the Court considered:
• Defendant Daniel Terrazas-Aguirre's [hereinafter "Defendant"] "Oral Motion for Judgment of Acquittal in Open Court" on October 12, 2017 [hereinafter "Motion for Acquittal"];
• Defendant's "Brief in Support of Rule 29 Motion for Judgment of Acquittal" (ECF No. 74) [hereinafter "Brief"], filed on October 26, 2017;
• Defendant's "Motion for New Trial" (ECF No. 75), filed on October 27, 2017;
• The United States of America's [hereinafter "Government"] "Response to Defense Motion for a Judgment of Acquittal" (ECF No. 77) [hereinafter "Response"], filed on October 27, 2017;
• The Government's "Response to Defense Motion for New Trial" (ECF No. 80), filed on November 7, 2017; and
• Defendant's "Reply to Government's Response to Defense Motion for New Trial" (ECF No. 82), filed on November 14, 2017, in the above-captioned cause.
In his motions, Defendant asks the Court to enter a judgment of acquittal or, in the alternative, to grant him a new trial. After due consideration, the Court is of the opinion that Defendant's Motion for Acquittal or, in the alternative, Motion for New Trial should be granted.[1]
I. RELEVANT PROCEDURAL BACKGROUND
On August 23, 2017, Defendant was charged in a one-count indictment for knowingly and intentionally possessing with intent to distribute a controlled substance, to-wit: marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). Indictment, Aug. 23, 2017, ECF No. 15. Defendant requested a jury trial, and jury selection was held on October 11, 2017.
On October 12, 2017, the Government began and concluded its case-in-chief. After the Government rested, Defendant made an Oral Motion for Judgment of Acquittal under Fed. R. Crim. P. 29. Defendant argued that there was insufficient evidence to prove beyond a reasonable doubt that Defendant knowingly and intentionally possessed marijuana with the intent to distribute it. Trial Transcript volume 1, 203:5-204:8, Oct. 12, 2017, ECF No. 70 [hereinafter "Transcript volume 1"]. Specifically, Defendant contended that the Government established no chain of custody "to link the marijuana that was tested by the chemist [to the marijuana] that was taken out of the van in question in this case." Id. The Court reserved its ruling on Defendant's Motion for Acquittal at that time.
Defendant, electing not to present any evidence, then rested subject to the pending motion. Id. at 208:9-18. In addition, Defendant made an oral motion to strike the testimony of Bradley Fleming, a DEA chemist called by the Government as an expert witness in the case, on relevance *953 grounds. Id. at 213:10-214:8. Defendant's motion to strike was again premised upon the Government's failure to establish a chain of custody. Id. Without ruling on the pending motions, the Court recessed for the day. Id. at 215:17.
On October 13, 2017, the Court addressed the pending motions. The Court first granted Defendant's motion to exclude the testimony of the expert witness for lack of relevance.[2] Trial Transcript volume 2, 3:9-18, Oct. 13, 2017, ECF No. 70 [hereinafter "Transcript volume 2"]. The Court then addressed Defendant's Motion for Acquittal. During this time, the Government made an oral motion to reopen its case for the "limited purpose of putting on evidence relating to the chain of custody of the marijuana seized in the case." Resp. 2. The Court denied the Government's motion. Tr. vol. 2, 9:14-18. The Court then determined that it would submit the case to the jury while again reserving decision on Defendant's Motion for Acquittal. Id. at 10:12-16.
The jury began deliberations on October 13, 2017. After deliberating approximately six hours, the jury returned a unanimous verdict of guilty. Id. at 57:22-24.
After the verdict was returned, the Court afforded the parties until October 27, 2017, to provide briefing relating to the pending Motion for Acquittal. Id. at 60:23-25. Defendant filed a "Brief in Support of Rule 29 Motion for Judgment of Acquittal" (ECF No. 74) on October 26, 2017, and a "Motion for New Trial" (ECF No. 75) on October 27, 2017, "in the event that the Court denies" Defendant's pending Motion for Acquittal, Mot. for New Trial 1. The Government filed a "Response to Defense Motion for a Judgment of Acquittal" (ECF No. 77) on October 27, 2017, and a "Response to Defense Motion for New Trial" (ECF No. 80) on November 7, 2017.
II. RELEVANT FACTUAL BACKGROUND
On or about July 29, 2017, at approximately 8:30 a.m., Defendant approached the Sierra Blanca Checkpoint in Sierra Blanca, Texas driving a 2008 Chrysler Town and Country minivan. Tr. vol. 2, 31:2-6. At that time, U.S. Border Patrol Agent Cortez [hereinafter "Agent Cortez"] was working "preprimary operations" at the checkpoint with his assigned canine, Lady. Tr. vol. 1, 108:5-13. In the preprimary area, Agent Cortez was screening vehicles before they reached the primary inspection area. Id. As the minivan that Defendant was driving entered the checkpoint and passed by Agent Cortez's location, Lady "alerted"[3] and began following the vehicle to the primary inspection area. Id. at 108:21-24.
At the primary inspection area, U.S. Border Patrol Agent Jesus Ovalle [hereinafter "Agent Ovalle"] conducted an immigration inspection with Defendant. Id. at 40:11-42:21. Agent Ovalle did not testify as to what this immigration inspection entailed. Id. at 42:18-21. During this time, Lady continued to alert to the minivan at the primary inspection area. Id. at 110:3-5. Agent Cortez then signaled for Agent Ovalle to refer the vehicle to the secondary *954 inspection area, and Agent Ovalle did so. Id. at 42:24-43:4.
At the secondary inspection area, Lady continued to alert to the minivan. Id. at 111:3-112:9. Agent Cortez then opened the door to allow Lady inside the vehicle, where Lady began attempting to find the "source." Id. at 112:17-18. The "source" is the location of the strongest odor emanating from narcotics or concealed humans, and the canines are trained to pinpoint this area. Id. at 112:22-25. Ultimately, Lady identified the hinges on the floorboard of the vehicle with the front and passenger's seats attached to it as the source. Id. at 113:14-21. After removing the front and passenger's seats and removing the carpet below, border patrol agents located two trapdoors. Id. at 114:8-11. The trapdoors were opened, and agents thereupon discovered plastic-wrapped bundles. Id.
Agents, including Agent Cortez, then proceeded to remove the bundles from inside the vehicle. Id. at 114:19. Of the bundles removed, "[s]ome were placed immediately outside of the door, trapdoor, ... in an orange bin to be able to take them inside the checkpoint." Id. at 115:6-8. Thereafter, Agent Cortez took some or all of the bundles inside the checkpoint, helped to weigh them, and conducted a field-test. Id. at 114:19-21.
While Defendant's car was still at the secondary inspection area, Agent Ovalle took Defendant into the checkpoint building. Id. at 44:14-22. While inside the building, Agent Ovalle asked Defendant about ownership of the vehicle and his intended destination. Id. at 45:1-48:10. Defendant responded with conflicting accounts regarding ownership of the minivan and how Defendant came into possession of it. Id. at 45:24-48:10. This conversation was not recorded. Id. at 48:11-12.
Sometime thereafter, Agent Ovalle was informed that "marijuana had been found in the vehicle." Id. at 48:16-18. Agent Ovalle then read Defendant his Miranda rights, and arrested him. Id. at 48:16-24. Agent Ovalle performed a search of Defendant's person, and discovered that Defendant was in possession of 3,318 dollars in cash. Id. at 49:1-4.
After his arrest, three border patrol agents interviewed Defendant at the Sierra Blanca checkpoint, including U.S. Border Patrol Agent Perez and Case Agent Roetlin. Id. at 148:11-17. The Government offered into evidence an audio recording of the interview, with an accompanying transcript, which was admitted. Thereafter, the Government initiated its prosecution of Defendant, giving rise to the case now before the Court.
III. MOTION FOR JUDGMENT OF ACQUITTAL
A. LEGAL STANDARD
"A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." United States v. Lucio , 428 F.3d 519, 522 (5th Cir. 2005) (quoting United States v. Medina , 161 F.3d 867, 872 (5th Cir. 1998) ). A court reviewing such a motion "owe[s] great deference" to the jury verdict. United States v. Gray , 96 F.3d 769, 772 (5th Cir. 1996). "In deciding the sufficiency of the evidence, the relevant question is 'whether any rational trier of fact could have found the essential elements of the crime beyond reasonable doubt.' " United States v. Lopez-Monzon , 850 F.3d 202, 206 (5th Cir. 2017) (quoting Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ). Accordingly, a court "must assume that the evidence offered by the prosecution is true and weigh the evidence in a light most deferential to the verdict rendered by the jury." Id. (internal citation omitted).
To uphold a conviction, "the evidence need not exclude every hypothesis of innocence."
*955 United States v. Diaz-Carreon , 915 F.2d 951, 953-54 (5th Cir. 1990). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." Lucio , 428 F.3d at 522. Courts do not determine "whether the jury correctly determined guilt or innocence" but only "whether the jury made a rational decision." Rojas Alvarez , 451 F.3d 320, 326 (5th Cir. 2006) (quoting United States v. Lopez-Urbina , 434 F.3d 750, 757 (5th Cir. 2005) ).
In this case, to withstand Defendant's Motion for Acquittal, a rational trier of fact must have been able to find that the Government proved the following elements for the crime of possession with intent to distribute under 21 U.S.C. § 841(a)(1) beyond a reasonable doubt: (1) that Defendant knowingly possessed a controlled substance; (2) that the substance was in fact marijuana; and (3) that Defendant possessed the substance with the intent to distribute it. See FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases) § 2.93 (2015).
B. ANALYSIS
Viewing all of the evidence in the light most favorable to the Government, with all reasonable inferences and credibility determinations made in support of the jury verdict, the Court determines that the Government failed to prove all of the essential elements of the crime beyond a reasonable doubt. Specifically, the Court finds that a rational trier of fact could not have found that the Government proved the second element; that is, that the suspected contraband found in the vehicle was marijuana. Accordingly, the Court grants Defendant's Motion for Acquittal.[4]
It is well established and not disputed that the identity of a controlled substance may be proved by circumstantial evidence. See United States v. Quesada , 512 F.2d 1043, 1045 (5th Cir. 1975) ("The nature of the substance as a narcotic need not be proved by direct evidence if the circumstantial evidence presented establishes ... that beyond a reasonable doubt the substance was [as charged]."); United States v. Bell , 237 Fed.Appx. 942, 943 (5th Cir. 2007) ("It is established that circumstantial evidence, supported by lay testimony, may be sufficient to establish the identity of a controlled substance, and we have expressly rejected the argument that scientific evidence is required."). This includes, for example, "lay experience based upon familiarity through prior use." United States v. Osgood , 794 F.2d 1087, 1095 (5th Cir. 1986). Additionally, "[t]he introduction of a chemical analysis of the substance is not essential to conviction." Quesada , 512 F.2d at 1045.
Although it is clear that circumstantial evidence may be used to prove the identity of a substance, the Fifth Circuit has yet to articulate any standard that is required to be met in determining the precise amount of circumstantial evidence necessary for conviction.[5] Instead, and contrary to the Government's Response, the Fifth Circuit has identified "permissible" though not necessarily "sufficient" types of circumstantial proof. See Resp. 7 (citing United States v. Eakes , 783 F.2d 499, 505 (5th Cir. 1986) in arguing that the Fifth Circuit identified sufficient circumstantial evidence *956 to establish the identity of a controlled substance). These include:
Evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on in secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.
Eakes , 783 F.2d at 505 (citing United States v. Scott , 725 F.2d 43 (4th Cir. 1984) ). Importantly, however, the Fifth Circuit noted in Eakes that where these "permissible types" of evidence were sufficient to establish the identity of a controlled substance, "all of these types of circumstantial proof were present." Id. (emphasis added).
Despite the lack of identifiable measures regarding the amount of circumstantial evidence required to prove a substance's identity, Fifth Circuit precedent involving circumstantial proof is instructive. The Government relies on three such cases in particular: United States v. Osgood , 794 F.2d 1087 (5th Cir. 1986) ; United States v. Quesada , 512 F.2d 1043 (5th Cir. 1975) ; and United States v. Brown , 887 F.2d 537 (5th Cir. 1989). Resp. 6-7; Tr. vol. 1, 210:21-211:18 (stating that these cases "basically stand for the proposition even outside of the chemical analysis that the identity of a substance can be proven by circumstantial evidence ...").
In United States v. Osgood , the Fifth Circuit examined whether the circumstantial evidence that the government presented was sufficient to prove the identity of a substance as cocaine. 794 F.2d 1087 (5th Cir. 1986). The court concluded that the evidence was sufficient. Id. In particular, the court cited "overwhelming evidence of [the defendant's] cocaine trafficking involvement," which was corroborated by witness testimony that the witness had (1) used the substance produced by the defendant, (2) could identify it as cocaine because he had previously used cocaine, (3) was familiar with its effects, and (4) experienced a euphoric feeling after ingesting it consistent with his previous use. Id. at 1095. Based upon this evidence, the Fifth Circuit determined that the "threshold" of circumstantial proof "was adequately satisfied." Id.
Similarly, in United States v. Quesada , the Fifth Circuit relied on substantial witness testimony in determining that circumstantial evidence proved that the substance at issue was heroin. 512 F.2d 1043 (5th Cir. 1975). The evidence included testimony about two separate transactions in which the defendant "was intimately involved [with] the substance" and where the substance was "continuously referred to as the 'very best' heroin in his presence." Id. at 1045. The defendant also described the substance as heroin in conversations, and helped to weigh and package the substance during his possession of it. Id. Evidence showed that the substance was a white powder, that it was sold to the defendant on two occasions for 20,000 dollars per kilogram, and that he "resold it after [ ] buyers tested it and pronounced it to be heroin." Id.
Finally, in United States v. Brown , evidence of the defendant's handling of the substance in question and his involvement in transactions therewith were found to be sufficient circumstantial proof of the substance's identity. 887 F.2d 537, 542 (5th Cir. 1989). Evidence included the testimony of multiple witnesses who were experienced in identifying cocaine. These witnesses *957 testified that the defendant had delivered cocaine to them on more than one occasion, and that on each occasion the defendant had handled the substance in the same manner as he did in Brown. Additionally, on each occasion, substantial "sums of money were paid" for the substance, it was "carefully tested and weighed" after its delivery, and it was "then divided into smaller amounts and packaged in plastic sandwich bags" before being distributed to "various crack houses where it was eventually resold." Id. The court thus determined that evidence "of this continuing pattern was sufficient for the jury to conclude that the substance involved was cocaine." Id.
The Court agrees that, in each of these cases, the Fifth Circuit found that circumstantial evidence was sufficient to prove the identity of the controlled substance at issue. However, each of these cases contained significantly and substantially more circumstantial proof than was presented in the instant case. Compare also United States v. Crisp , 563 F.2d 1242, 1244 (5th Cir. 1977) (finding circumstantial evidence to be sufficient where two witnesses testified that on "numerous occasions, including those which formed the basis for the substantive counts, [ ] defendants [had] referred to [the] white powder they were handling as 'coke' or 'cocaine,' " that the defendants and one witness had snorted the cocaine, and that the defendants had "cut the substance, weighed it, tested it over a flame and under a microscope, and sold it for substantial sums of money," all confirming that the substance was cocaine); United States v. Bell , 237 Fed.Appx. 942, 943 (5th Cir. 2007) (finding "ample circumstantial and lay evidence to show that the substance involved was crack cocaine," including the testimony of two witnesses who stated that they purchased the crack from the defendant paying a price "consistent with the going price of crack," that they witnessed the defendant prepare the substance in the same way that crack is normally prepared, and that they tested the substance which confirmed that the substance at issue was crack cocaine).
In stark contrast to the Fifth Circuit cases discussed above, the Government's evidence in this case is strikingly limited. The Government provided no evidence, for example, that the money that Defendant possessed during his arrest was connected to any transaction or sale by Defendant, compare Quesada , 512 F.2d at 1043, or to Defendant's involvement in a larger drug trafficking scheme involving specifically marijuana, compare Osgood , 794 F.2d at 1095. The Government called no witness to confirm that the taste of the substance or the effect of ingesting it was consistent with marijuana. Id. No witness testified to purchasing marijuana from Defendant, compare Bell , 237 Fed.Appx. at 943, or to hearing Defendant refer to the drug as marijuana, compare Crisp , 563 F.2d at 1244. Indeed the Government had no witness to even confirm the appearance of the substance as marijuana,[6] despite having an agent testify at trial that he had handled, weighed, and field-tested the bundles secreted in the minivan's floorboard compartment.
Instead, the Government's circumstantial evidence-according to the Government's own Response-was limited to the following:
[T]he alert of the canine to the vehicle, then to the specific location in the vehicle where the drugs were located; the lack of any other drugs or concealed humans in the car to which the canine *958 may have been alerting; the identification of the substance by its smell and appearance as marijuana by an Agent with 15 years' experience; the manner of packaging of the marijuana and its location in a hidden compartment within the vehicle; the smell of marijuana coming from the hidden compartment in which the substance was located and which the Agent only detected after the trap doors were opened; and the field-test of the substance as positive for marijuana.
Resp. 10.
In light of the Fifth Circuit's precedent, the Court finds that a rational trier of fact could not find that the circumstantial evidence provided at the trial of this case proves the substance's identity beyond a reasonable doubt.
The Court will address each of the Government's assertions in detail:
1. The alert of the canine to the vehicle, then to the specific location in the vehicle where the drugs were located
The first piece of circumstantial evidence that the Government cites is the alert of the canine, Lady, to the vehicle and trapdoors. Resp. 10. Specifically, the Government argues that Lady's alert to the vehicle and then to the specific location of the bundles within the vehicle is evidence that the bundles contained marijuana. Defendant contends, instead, that the odor for which Lady alerted was linked to the trapdoor compartment, and not necessarily to the bundles secreted therein. Br. 2. Further, Defendant persuasively argues that Lady's alert provides no evidence that the contraband to which she alerted was marijuana, and not any of the other various items that she is trained to detect. Id.
Although Lady's alert provides some circumstantial evidence that the vehicle may have contained contraband, either at the time of the search or sometime before, the Government failed to show that the alert was the result of marijuana contained within the bundles and marijuana alone. Trial testimony revealed that Lady was trained to alert to the smell of numerous types of contraband emanating from a vehicle. Tr. vol. 1, 125:4-18. Lady was also trained to alert to all of these items in the same way, meaning that an alert to any of the aforementioned items would be indistinct. Id. at 125:19-23. A rational trier of fact could thus not conclude that Lady's alert alone established the presence of marijuana as opposed to any of the other items that she is trained and able to detect.
Further, Agent Cortez testified that Lady is trained to detect the odor of drugs, rather than the presence of the substance itself. Id. at 127:17-18. Consequently, Lady has alerted to the smell of contraband emanating from a vehicle at the checkpoint even when no contraband was ultimately found inside. Id. at 127:9-11. This is because the smell of drugs previously contained within a vehicle may linger, causing Lady to alert in the same manner whether contraband is contained within the vehicle or not. Id. at 127:19-23. Thus, when Agent Cortez was asked whether he "would bet on it that there were drugs in the car" in this case, he responded "[e]ither at one point in time or another or still in the car at that time, yes." Id. at 128:12-15.
If Agent Cortez-who assisted in removing, weighing and field-testing the bundles-cannot say for certain whether Lady alerted to marijuana in the vehicle, no rational trier of fact could find that this evidence, either in isolation or considered with the evidence below, proves the identity of the charged substance beyond a reasonable doubt.
2. The lack of any other drugs or concealed humans in the car to which the canine may have been alerting
The Government also contends that the absence of any other drugs or concealed *959 humans in the car is circumstantial evidence that the substance was marijuana. However, this argument suffers from the same defect as the Government's previous argument; that is, that it assumes without proving that the substance contained within the bundles was marijuana. While Lady's alert provides circumstantial evidence that contraband may have been contained within the bundles, it again has little bearing on whether that contraband was marijuana or any of the other substances to which Lady is trained and able to detect.
3. The identification of the substance by its smell and appearance as marijuana by an Agent with fifteen years' experience
The Government contends that the smell of the substance is circumstantial evidence identifying it as marijuana. Specifically, the Government claims that Agent Cortez "smelled the odor of marijuana" upon opening the trapdoors, which is a "distinct odor with which he was familiar through training and fifteen years' experience as a Border Patrol Agent." Resp. 3. At trial, however, Agent Cortez testified that he could not smell any marijuana outside the vehicle, or even inside the vehicle before the trapdoors were opened. Id. at 129:23-130:3. Once the trapdoors were opened, Agent Cortez could smell marijuana "a little bit," leading him to "assume [ ]" that the substance was marijuana. Id. at 119:5-6. Agent Cortez did not testify, however, that he smelled the physical bundles and that they smelled of marijuana. He also provided no testimony that the smell of marijuana disappeared once the bundles were extracted from the vehicle, which would have shown that the smell was not lingering from marijuana previously contained within the compartment. Thus, although Agent Cortez's testimony of a slight smell of marijuana within the vehicle is some evidence that the bundles possibly contained marijuana, a rational trier of fact would find the weight of this evidence enfeebled by Agent Cortez's limited testimony.
Further, regarding the substance's "appearance as marijuana," the Government informed the Court on three occasions that Agent Cortez testified that the substance contained within the bundles was a "green, leafy substance." See Resp. 3; Tr. vol. 1, 204:14-15; Tr. vol. 2, 7:14-15. The Government also referred to such evidence during its closing argument. Tr. vol. 2, 28:1-3 ("It was a green, leafy substance that was put in a hidden compartment ...."). As the Government has now acknowledged, however, the record is devoid of such testimony from Agent Cortez. Government's Suppl. Br. 1-2 (stating that "[h]aving reviewed the testimony ... the United States acknowledges ... that its representation was in error"). Further, the Court finds no witness, other than the Government's expert witness (whose testimony was stricken), to have testified regarding the appearance of the substance as charged. Accordingly, the Government's circumstantial evidence does not include any description of the appearance of the substance.
4. The manner of packaging of the marijuana and its location in a hidden compartment within the vehicle
The Government argues that the packaging of the bundles and their location beneath the trapdoors of the vehicle is circumstantial evidence that the substance was marijuana. The bundles were packaged in PVC tape and wrapped again in clear plastic. Id. at 138:10-11. The bundles were also found in a hidden compartment located underneath seats, plastic rocker panels, a layer of carpet, and a layer of foam. Id. at 134:1-22. The Court finds that a trier of fact could find that this evidence supports the Government's assertion that the bundles contained contraband. See, *960 e.g., Eakes , 783 F.2d at 505 (citing United States v. Scott , 725 F.2d 43, 45-46 (4th Cir. 1984) ) (finding that "evidence that transactions involving the substance were carried on with secrecy or deviousness" was permissible circumstantial evidence); Brown , 887 F.2d at 542 (citing the division and packaging of the cocaine into plastic sandwich bags as legitimate circumstantial evidence). However, the Government did not present evidence that the manner in which the bundles were packaged or hidden was unique to marijuana and thus could not have contained another type of contraband inside.
5. The smell of marijuana coming from the hidden compartment in which the substance was located and which the Agent only detected after the trap doors were opened
The Court extends the same analysis here as discussed above, and concludes that although the smell of marijuana emanating from the hidden compartment is some circumstantial evidence that the bundles contained marijuana, a rational trier of fact would find Agent Cortez's limited testimony to provide only nominal support of this fact.
6. The field-test of the substance as positive for marijuana
Finally, the Government contends that the field-test performed by Agent Cortez on the bundles was positive for marijuana, and that this evidence supports the identity of the substance as charged. The Government offered no evidence, however, regarding the field-test itself, and, significantly, failed to establish a chain of custody to prove that the bundles tested were the same bundles extracted from the vehicle that Defendant was driving. As such, a rational trier of fact would find the fact that a field-test was performed to be of limited value in proving the substance's identity.
a. The field-test performed
During its opening statement, the Government informed the jury that it would hear evidence regarding the "field-test" performed on the bundles.[7] Next, the jury would hear from "an expert DEA chemist," who would discuss the multiple tests that he ran on the bundles which came up positive for marijuana. Id. at 31:8-10. During trial, however, the testimony of the DEA chemist was stricken.
During trial, the Government provided only the following testimony regarding the field-test. Agent Cortez testified that, sometime after the bundles were removed from the vehicle and weighed, Agent Cortez "conducted a field-test of the bundles which revealed marijuana." Tr. vol. 1 at 114:19-23. During direct examination, the Government followed up on this testimony by asking: "The field-test was positive for marijuana?" Id. at 114:22. Agent Cortez responded: "Yes." Id. at 114:23. The Government presented no further evidence regarding the field-test performed.
Despite Agent Cortez's testimony that a "test" was performed, no information about the test was provided. This includes any information regarding the precise nature of the "test" itself. As far as the jury was aware, the test could have included a chemical analysis, a sight test, a smell test, or even a taste test of the substance contained within the bundles. There is no testimony regarding whether this "test" was routinely performed by border patrol agents, or whether it was reliable in determining the identity of a controlled substance. Even assuming arguendo that a *961 test was performed with some degree of reliability, the record is further bereft of any evidence regarding how the results of the test were reached or read, and how Agent Cortez concluded from the results that the bundles "tested positive for marijuana." Id. at 114:19-23. This is especially true since Agent Cortez provided no testimony as to whether one, some, few, many or all of the bundles were "tested." Compare United States v. Barnes , 586 F.2d 1052 (5th Cir. 1978) (where the witness performing the field-test testified that the cocaine was contained in a number of small plastic bags, each separate bag was field-tested, and each of them tested positive for cocaine). Instead, the record contains only the testimony of a single witness that a "test" was performed on one or some of the bundles, and that the test yielded a positive result for marijuana. Such glaring omissions regarding the performance of the field-test undermine the Government's contention that the field-test serves as circumstantial evidence that the substance was marijuana. Although jurors may accept the Government's simple assurance that the bundles were "tested," despite the Government providing no evidence to corroborate this statement, the Court finds that the Government failed to present sufficient evidence to allow this piece of circumstantial evidence to meet the high standard required by law to convict an accused.
b. The chain of custody
In addition to the Government's lack of evidence regarding the field-test, the Government also failed to establish any chain of custody linking the bundles removed from the vehicle to those that Agent Cortez tested. During trial, Agent Cortez testified that, once the bundles were found, they were removed from inside the vehicle. Of the bundles removed, Agent Cortez stated that "[s]ome were placed immediately outside of the door, trapdoor, where we found them and then put them in an orange bin to be able to take them inside of the checkpoint." Id. at 115:6-8. No testimony was provided as to why only "some" of the bundles were placed outside of the trapdoors and put into the orange bin, and where the bundles not put within the orange bin were placed. Of the bundles placed within the orange bin, it is similarly unclear when these specific bundles were taken within the checkpoint building, to where, and by whom. See Government's Exhibit 3 (showing only the orange bin being pushed away from the vehicle before disappearing from the video).
Assuming that all of the bundles were ultimately taken from the removal area into the checkpoint building to be weighed, the only testimony regarding the weighing of the bundles again came from Agent Cortez. Agent Cortez testified that he "helped" to weigh the bundles, and that the weight of the bundles totaled ninety-nine pounds. Id. at 114:16-21. This testimony was corroborated by Government's Exhibit 4J, which shows a stack of numbered bundles on a scale and a white board behind the scale listing the weight of the bundles as 45.2 kilograms, or roughly ninety-nine pounds. Curiously, the name listed on the white board in Government Exhibit 4J was that of Agent Roetlin, the Case Agent at trial. Despite his presence at the Government's counsel table throughout the trial, however, Agent Roetlin never testified. As such, he offered no insight into to how the bundles were moved from the vehicle to the weighing area, and from the weighing area to the area where the bundles were ultimately tested.
Accordingly, the limited testimony provided by Agent Cortez regarding the chain of custody of the bundles after their removal from the vehicle was that he "took them inside, and [ ] helped weigh the bundles, and [ ] conducted a field[-]test of the bundles which revealed marijuana." Tr.
*962 vol. 1, 114:19-21. There is no evidence in the record, however, as to where the bundles were tested. If the bundles were not tested at the weighing area, there is no testimony as to where the bundles were transported, when and by whom. As such, the Government failed to establish a chain of custody for the bundles not only from the removal area to the weighing area, but also from the weighing area to wherever the bundles were tested. A rational trier of fact would thus not be able to discern whether the bundles that Agent Cortez tested were the same bundles extracted from the vehicle. Consequently, the Government's scant evidence of a "field-test" is further limited by its failure to establish a sufficient chain of custody regarding the bundles on which the test was performed. While breaks in chain of custody generally go to weight rather than admissibility, United States v. Johnson , 68 F.3d 899, 903 (5th Cir. 1995), this standard does not excuse the Government from laying any chain of custody evidence at all.
Notwithstanding the deferential standard for which the Court examines the Government's evidence, a conviction must nevertheless be based on more than "mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." United States v. Moreland , 665 F.3d 137, 149 (5th Cir. 2011) (citing United States v. Rojas Alvarez , 451 F.3d at 333 ). Because the Government provided no chain of custody for the bundles from the vehicle to the weighing area to the testing area, and no information regarding the field-test itself, the Court finds that a rational trier of fact would find that the positive field-test is, at best, only limited circumstantial evidence of the identity of the substance as marijuana.
When considering the evidence presented at trial, the Court finds that the Government adduced only the following circumstantial evidence to prove the substance's identity: the canine's alert to the vehicle and to the specific compartment of the vehicle with the bundles; Agent Cortez's testimony that he could smell marijuana "a little bit" once the trapdoors were opened, which he recognized based on his training and experience; the manner of packaging and location of the bundles within the vehicle; and the field-test performed on an unspecific number of the bundles for which no information was provided.
Even in judging all evidence in the light most deferential to the verdict, the Court cannot find that a rational trier of fact would conclude that the Government proved that the substance that Defendant possessed was marijuana. The Government bears the burden of proving each element of its case beyond a reasonable doubt, and the Court cannot overlook the Government's failure to fully and carefully present its evidence at trial. Where an individual's liberty is at stake, the Court must hold the Government at minimum to such diligence. As such, Defendant's Motion for Acquittal is granted.
C. Defendant's Motion for New Trial
Defendant contends that, in the event that his Oral Motion for Judgment of Acquittal is denied, the interest of justice demands a new trial. Def.'s Mot. for New Trial, Oct. 27, 2017, ECF No. 75.
Federal Rule of Criminal Procedure 33 provides that a court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In considering a motion for new trial, unlike for a motion for acquittal, a court "may weigh the evidence and consider the credibility of witnesses." United States v. Enriquez , No. EP-08-CR-059-DB(15), 2009 WL 522722, at *2 (W.D. Tex. Jan. 28, 2009) (citing United States v. Fuchs , 467 F.3d 889, 910 (5th Cir. 2006) ). However, "motions for new trial are not *963 favored, and are granted only with great caution." United States v. O'Keefe , 128 F.3d 885, 898 (5th Cir. 1997) (citing United States v. Hamilton , 559 F.2d 1370, 1373 (5th Cir. 1977) ). "The remedy of a new trial is rarely used; it is warranted 'only where there would be a miscarriage of justice' or 'where the evidence preponderates heavily against the verdict.' " Id.
Defendant argues that the Court "should vacate the jury's verdict and grant a new trial in the interest of justice because [Defendant's] trial was irreparably tainted by the stricken testimony of the expert chemist, particularly given the prosecutor's reliance on a portion of that stricken testimony during his closing argument." Mot. for New Trial 2. The Court agrees and finds that, in light of the foregoing discussion, Defendant's Motion for New Trial should be granted in the event, and only in the event, that the Court's determination regarding Defendant's Judgment of Acquittal is later vacated or reversed.
Accordingly, IT IS ORDERED that Defendant Daniel Terrazas-Aguirre's "Oral Motion for Judgment of Acquittal in Open Court" is GRANTED.
IT IS FURTHER ORDERED that Defendant Daniel Terrazas-Aguirre's "Motion for New Trial" (ECF No. 75) is GRANTED in the event, and only in the event, that the Court's decision to grant the Defendant's "Oral Motion for Judgment of Acquittal in Open Court" is reversed.
FINALLY, IT IS ORDERED that Defendant Daniel Terrazas-Aguirre's sentencing hearing scheduled for January 11, 2018, is hereby VACATED.

Fed. R. Crim. P. 29 requires that "[i]f the court enters a judgment of acquittal after a guilty verdict, the court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed. The court must specify the reasons for that determination."

During trial, forensic chemist and expert witness Bradley Fleming [hereinafter "Expert Fleming"] testified that he "receive[d] a sample related to this present case[.]" Tr. vol. 1 at 96:23-24. Expert Fleming tested the sample he received, and the sample tested positive for marijuana. Id. at 98:18-19. However, because the Government failed to establish any chain of custody between the sample tested by Expert Fleming and the bundles extracted from the vehicle driven by Defendant, the Court struck Expert Fleming's testimony.

An "alert" is a reaction by the canine based on its training to the smell of narcotics or concealed humans emanating from a vehicle at the checkpoint. Tr. vol. 1, 61:20-23.

Because the Court finds that a rational trier of fact could not find that the Government proved the second element of the offense beyond a reasonable doubt, it will not address whether the Government additionally failed to prove the first and third elements of the offense.

The Court acknowledges the difficulty of articulating this standard given the fact-specific inquiry required for cases involving the use of circumstantial evidence to prove the identity of a controlled substance.

The Government no longer contends that any testimony regarding the appearance of the substance was admitted at trial. Government's Suppl. Br. 2, Nov. 6, 2017, ECF No. 79.

The Government stated that the jury would first hear from "the agents how [the bundles] field-tested positive for the properties of marijuana ...." Tr. vol. 1, 31:7-8 (emphasis added). However, the jury heard from only a single agent-Agent Cortez-about the field-test performed.